IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES FIBER IP (SINGAPORE) PTE. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>IPTRONICS INC. and IPTRONICS A/S,<br><br>Defendants. | Case No. 10-CV-02863-EJD<br><br>**ORDER DENYING AVAGO LICENSEES' MOTION TO INTERVENE AND DENYING IPTRONICS' MOTION TO STAY CASE**<br><br>Re: Docket Item Nos. 79 and 86 |

Presently before the Court are two matters: (1) a Motion to Intervene, filed by Avago Technologies US, Inc., Avago Technologies General IP, Avago Technologies International Sales Pte. Ltd., and Avago Technologies Trading Ltd.; and (2) a Motion to Stay Case Pending Reexamination of the Patents-in-Suit, filed by IPtronics, Inc. and IPtronics A/S. For the reasons set forth below, both motions will be denied.

**I. BACKGROUND**

Plaintiff Avago Technologies Fiber IP (Singapore) Pte. Ltd. ("Avago Fiber IP") brought this action against Defendants IPtronics, Inc. and IPtronics A/S (together, "IPtronics") on June 29, 2010, alleging infringement of two patents owned by Avago Fiber IP. The two patents, U.S. Patent Nos. 5,359,447 and 6,947,456, relate to optical communications technology. IPtronics counterclaims for declaratory judgment of invalidity and noninfringement of both patents. Initial pleadings were all filed by October 11, 2010. Between October 2010 and February 2011 the parties exchanged

infringement and invalidity contentions, conducted claim construction discovery, and prepared a joint claim construction statement, all pursuant to the patent local rules.

On March 1, 2011, IPtronics filed requests with the United States Patent and Trademark Office for ex parte reexamination of both patents. Three days later, IPtronics moved to stay this action pending resolution of those proceedings. Both requests for reexamination were later granted.[1] As of the date of this Order, the PTO has made an initial determination in only one of the two pending reexaminations—it issued a non-final rejection of all claims of the '447 patent on June 14, 2011.

On May 26, 2011, a cascading series of license agreements was executed by the Plaintiff Avago Fiber IP and several of its affiliates by which some of Avago Fiber IP's rights under the patents-in-suit were passed to Avago Technologies General IP (Singapore) Pte. Ltd., Avago Technologies Trading Ltd., Avago Technologies International Sales Pte. Ltd., and Avago Technologies U.S., Inc. (collectively, the "Avago Licensees"). The four Avago Licensees, represented by the same counsel as Plaintiff Avago Fiber IP, moved to intervene in this case the day after the agreements were signed.

On June 17, 2011, Plaintiff Avago Fiber IP moved for leave to amend its complaint to add a number of causes of action for unfair competition. The proposed amended complaint also adds the Avago Licensees as "Plaintiff-Intervenors," apparently either under the assumption that the instant motion to intervene will be granted or as an alternative attempt to add the Licensees by joinder. The motion for leave to amend the complaint has not yet been set for hearing or been fully briefed, so it is not ripe for decision.

### II. THE AVAGO LICENSEES' MOTION TO INTERVENE

#### A. Legal Standards

A third party may intervene in a case either as a matter of right, under Fed. R. Civ. P. 24(a),

---

[1] IPtronics also filed a request for *inter partes* reexamination of the '456 patent; that request was denied. *Inter partes* reexamination, a relatively new procedure at the patent office, is not available for the older '447 patent.

or with the court's permission, pursuant to Fed. R. Civ. P. 24(b). To establish the right to intervene under Rule 24(a)(2), a third party applicant must meet four criteria:

> (1) [its] motion must be timely;
> (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
> (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
> (4) the applicant's interest must be inadequately represented by the parties to the action.

Sierra Club v. U.S. Environmental Protection Agency, 995 F.2d 1478, 1481 (9th Cir. 1993) (line breaks added). Put another way, "an applicant is entitled to intervene when his position is comparable to that of a person under [Fed. R. Civ. P. Rule 19(a)(1)(B)(i), which concerns joinder of necessary parties] . . . unless his interest is already adequately represented in the action by existing parties." Fed. R. Civ. P. 24 advisory committee's note on 1966 amendments. Establishing the right of a third party to intervene is thus more difficult than justifying joinder of that party: not only must the prospective intervenor have a jeopardized interest as required under Rule 19(a)(1)(B)(i), but that interest must also not already be adequately represented by the existing parties. In addition, a motion to intervene must be "timely," Fed. R. Civ. P. 24, while joinder of parties can happen "at any time." Fed. R. Civ. P. 21. Adequacy of representation is determined by reference to three factors:

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;
> (2) whether the present party is capable and willing to make such arguments; and
> (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

Arakaki v. Cayetano, 324 F.3d 1078, 1086 (9th Cir. 2003) (line breaks added); accord Citizens for Balanced Use v. Montana Wilderness Ass'n, — F.3d —, 2011 WL 3074809 (9th Cir. July 26, 2011).

Intervention by permission is at the court's discretion provided three threshold conditions are satisfied: (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action. Beckman Indus. v. International Ins. Co., 966 F.2d 470, 473 (9th Cir. 1992).

**B. Discussion**

*1. Intervention of Right*

The Court focuses its attention on whether the Avago Licensees' interests are adequately represented by the Plaintiff Avago Fiber IP, because this analysis is dispositive of the issue.

In the context of Rule 24, adequate representation refers to whether the third party's interests are spoken for in the litigation, and not the identity, nature, or quality of the legal representation—i.e., the attorneys. Nevertheless, it is noteworthy that the Avago parties—that is, the Plaintiff Avago Fiber IP and the four Avago Licensees—are all represented by the same counsel in this action. If the position of the Plaintiff were actually adverse to the positions of the Licensees, representation by the same counsel would be less likely.

As to liability, the interests of the Plaintiff and the Licensees are identical. The Licensees admit that the claims which they propose filing are the same as those of the existing Plaintiff. Both seek to prove infringement by IPtronics to the fullest extent possible, and both have an unmitigated interest in upholding the validity of the patent.[2]

Even so, the Licensees argue in their reply brief that Avago Fiber IP cannot adequately represent their interests because the Licensees are entitled to certain remedies, like damages for lost profits, to which the Plaintiff is not. But the Licensees' ability to seek those remedies would not be "impair[ed] or impede[d]" by the disposition of this case; the Licensees could bring a separate action against IPtronics at any time. Of course, a finding of invalidity would bar that recovery, but in light of the Avago companies' precisely aligned positions as to infringement and validity, the Licensees' interests are adequately represented by Avago Fiber IP on that issue. Though the separate action might be duplicative of this one, inefficiency is a consideration for the Rule 19 analysis, which specifically contemplates the "substantial risk" to an "existing party" of "incurring double, multiple, or otherwise inconsistent litigations." Fed. R. Civ. P. 19(a)(1)(B)(ii). There is no such provision in the language of Rule 24.

For the foregoing reasons, the Court finds that the Plaintiff Avago Fiber IP adequately represents the interests of the Avago Licensees, so they do not have a right to intervene.

---

[2] Sometimes intervention is appropriate where the patent owner and the licensee have different interests with regard to the validity of the patent—for example, where the licensee would not mind a finding of invalidity because it would then be free to stop paying royalty payments under its license. Having considered all the documents filed in this case, the Court finds such a concern unwarranted among the Avago affiliates.

4

Case No. 10-CV-02863-EJD
ORDER DENYING MOTION TO INTERVENE AND DENYING MOTION TO STAY

*2. Intervention by Permission*

Although the Licensees are not entitled to intervene, they nevertheless request permission to intervene under Rule 24(b). The Court declines to extend that permission at this time. In short, intervention is the wrong mechanism for the Avago Licensees to enter this case.

In the briefs on the motion to intervene, the parties addressed the issue of whether the license agreements accord standing on the Licensees to participate in this case. The issue was raised because it is relevant to the "independent jurisdictional ground" required for permissive intervention.[3] The Court looks forward to analyzing the Licensees' right to participate in the case, but it will do so in the context of the Plaintiff's motion for leave to amend its complaint. Waiting to decide that issue is especially justified for two reasons. First, it appears that Avago did not produce the license agreements on which that right may be based until just before the due date of Defendant's opposition to the motion to intervene. Second, and more importantly, deciding the scope of this case—which parties and which claims will proceed—is best done all at once. To the extent that Plaintiff needs to amend or refile its June 17 motion to explicitly address the joinder of Licensees, it may do so.

Even though it appears that the Plaintiff Avago consents to and, indeed, supports the intervention of the Avago Licensees, the Court declines to take the leap of construing the Licensees' motion to intervene as a joinder motion by the Avago Plaintiff. The Court has doubts that it is appropriate to recast the motion of one party as that of another, much less to consider the motion of a non-party in that manner.

**III. IPTRONICS' MOTION TO STAY**

**A. Legal Standards**

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). In this district, there is—or, at least, there used to be—"a

---

[3] IPtronics also argued that standing is a requirement for intervention by right, citing Federal Circuit law; Avago argued that it is not, citing Ninth Circuit law.

liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings," ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D. Cal. 1994), though some courts have begun to rethink that policy in recent years. See, e.g., Network Appliance Inc. v. Sun Microsystems Inc., 2008 WL 2168917 at *3 (N.D. Cal. May 23, 2008). In any event, "[a] court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." NTP, Inc. v. Research In Motion, Ltd., 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (citing Viskase Corp. v. Am. Nat'l Can Co., 261 F.3d 1316, 1328 (Fed. Cir. 2001)).

Courts commonly analyze three factors when determining whether to grant a stay pending reexamination: (1) whether discovery is complete and whether a trial date has been set, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. Telemac Corp. v. Teledigital, Inc., 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006). Case-specific equitable concerns are also often taken into account.

**B. Analysis**

*1. Stage of Proceedings*

The later in the litigation that the reexamination request is made, the more likely it is to represent a tactical move for delay. See, e.g., Telemac, 450 F. Supp. 2d at 1111. Defendant's requests for the patent reexaminations and for a stay of these proceedings were made about eight months after the filing of the complaint. At that time, invalidity and infringement contentions had already been exchanged, claim construction discovery was complete, and the parties had completed a joint claim construction statement, and fact discovery had begun. The Court denied a motion to stay discovery while the motion to stay the case was pending. Since then, the case was reassigned to the undersigned judge. As a result, no claim construction hearing date or trial date is set, so briefing on issues of claim construction has not begun. Discovery is now well underway, however; more than two million pages of documents have been produced, and at least two depositions have been taken. The parties appear to have made some investment in the litigation, but most of that has happened in the months since the stay motion was initially filed. Accordingly, the Court finds this factor to weigh

6
Case No. 10-CV-02863-EJD
ORDER DENYING MOTION TO INTERVENE AND DENYING MOTION TO STAY

slightly in favor of staying the proceedings at this stage.

*2. Simplification of Issues*

At the core of the stay analysis is examination of what benefit the Court and the litigation might reap from having issues of validity reviewed by the PTO before they are addressed in court. Both patents-in-suit are the subject of pending ex parte reexaminations. In the time since IPtronics filed its motion to stay, the PTO has issued an initial office action rejecting all of the claims of the '447 patent. If that rejection becomes final, Avago will have to amend the patent's claims, if it can, to overcome the reasons for rejection. See 37 C.F.R. §§ 1.111–.116. The initial rejection of the '447 patent claims suggests that reexamination will at least provide the Court with useful guidance in the validity analysis—if indeed the '447 patent survives the reexamination at all. No initial action has been taken in the reexamination of the '456 patent.

Notably, however, IPtronics' request for *inter partes* reexamination of the '447 patent was denied by the PTO. *Inter partes* reexaminations—unlike ex parte reexaminations—are guaranteed to finally resolve at least some issues of validity because the requesting party is barred from seeking district court review on any grounds that it could have raised in the reexamination. 35 U.S.C. § 315(c). No such estoppel arises from ex parte reexaminations. Since the reexaminations at issue on this motion are both ex parte, the only way they will finally resolve any issues of validity is if the PTO cancels some claims entirely.

The parties offer competing interpretations of PTO statistics about the rates at which ex parte reexaminations result in the eventual confirmation, amendment, and cancellation of patent claims. It appears likely that the proceedings will, at the very least, give the Court a more extensive record on the prosecution history of the two patents. But the claims might also be confirmed, or they might be amended in a manner that does not affect this case. Complete cancellation of both patents is unlikely.

The value of the expertise that will likely be added to the litigation by the PTO's review leads the Court to find the simplification factor to favor granting the stay. But the uncertainty as to the result of the proceedings, and the possibility of relitigating all the same issues that the reexamination would have purportedly already decided gives this factor only moderate weight.

*3. Undue Prejudice or Clear Tactical Disadvantage*

If a requested stay would result in undue prejudice or a clear tactical disadvantage to the non-movant, the stay may be denied. One basis often cited for undue prejudice is the delay caused by the stay. On this record, the eight month interval between Plaintiff's filing of the Complaint and Defendant's Motion to Stay is neither so long as to raise suspicion of strategic delay nor so short as to establish obvious good faith on the part of the Defendant. Accordingly, the Court finds that the timing of IPtronics' motion to stay raises no presumption about the propriety of either party's motive or tactics.

The parties' status as competitors in the market raises another possibility for the Plaintiff to make a showing of undue prejudice apart from just the delay.[4] Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages. See Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327–28 (Fed. Cir. 2008). Staying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude. See Tesco Corp. v. Weatherford Int'l, Inc., 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009).

Avago argues in opposition to the stay that it is suffering harm to its "reputation as being the industry leader" and to the "goodwill that Avago should be entitled to realize by branding itself as an innovative company ahead of the competition." Pl.'s Opp'n to Def.'s Mtn. to Stay Pending Reexam. at 10. While the Court views skeptically the unsupported assertions of harm to reputation and goodwill, there are other, more pressing marketplace harms detailed in the declaration of an Avago affiliate's product marketing manager. Hall Decl., docket no. 97, ¶¶ 11 and 13, filed under seal. IPtronics replies, correctly, that competition between opponents in lawsuits is "nothing unusual or out of the ordinary." Pl.'s Reply in Supp. of Mot. to Stay at 5. But even "ordinary" competition can justify denial of a stay when that competition is based on alleged infringement and has effects that would be difficult to reverse after the fact.

IPtronics suggests that Plaintiff should have requested a preliminary injunction if it were

---

[4] Though IPtronics is not in direct competition with the Plaintiff Avago Fiber IP, it does compete directly with Avago Fiber IP's parent company and the parent company's subsidiaries.

worried about irreparable harm, and that its failure to do so weakens its opposition to the stay motion. This contention is flawed. As IPtronics points out, Avago might have other reasons for deciding not to pursue injunctive relief at this stage—for example, the difficulty of showing a likelihood of success on the merits while its patents are in reexamination. On IPtronics' motion to stay, the Court will not hold against Avago its decision to spare the parties more litigation.

Accordingly, the Court finds the prejudice factor to weigh moderately against granting a stay.

*4. The Court's Calendar*

Because of a confluence of circumstances relating to the administration of the courts in this district, the Court's calendar is full through the end of this year and well into 2012; the parties are advised that the Markman hearing likely cannot be scheduled any earlier than April 2012. As a fortuitous consequence of this abnormal delay, this case can proceed in parallel with the reexaminations for some time without any worry that the Court is expending resources on issues that may eventually be moot. The congestion in the Court's calendar may, as a practical matter, have some of the stay effects that this Order declines to officially impose. For example, while the parties shall continue with discovery, they will have relief from briefing claim construction for at least six months. If a stay were granted on top of this congestion, the result would be excessive delay—trial would be years away.

This factor weighs heavily against staying the case.

**C. Conclusion**

The Court finds that the interests of justice will best be served by keeping this case on track for claim construction and trial, while considering any PTO actions as they issue. The reexaminations may simplify or illuminate issues that will come up in this litigation, but staying the case until the reexaminations finish is not necessary to realize the benefits of the PTO proceedings. Accordingly, IPtronics' motion to stay the case is denied at this time.

In light of the pending reexamination, the Court will grant the parties reprieve from the recent amendments to Civil L.R. 7. This relief will have the effect of delaying the claim construction briefing schedule for as long as possible before the Markman hearing.

9
Case No. 10-CV-02863-EJD
ORDER DENYING MOTION TO INTERVENE AND DENYING MOTION TO STAY

**IV. ORDER**

Good cause therefor appearing, IT IS HEREBY ORDERED that IPtronics' Motion to Stay Case Pending Reexamination of the Patents-in-Suit is DENIED. The Motion of Avago Technologies US, Inc., Avago Technologies General IP, Avago Technologies International Sales Pte. Ltd., and Avago Technologies Trading Ltd. to Intervene is DENIED.

Dated: July 28, 2011

EDWARD J. DAVILA
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Ary Chang achang@foley.com
Cynthia Jo Franecki cfranecki@foley.com
Dana Johannes Finberg dfinberg@sonnenschein.com
Gina Ann Bibby gbibby@foley.com
Imran A. Khaliq imran.khaliq@snrdenton.com
Jimmy M. Shin james.shin@snrdenton.com
John C. Vetter jvetter@foley.com
Matthew Peter Larson matthew.larson@snrdenton.com
Richard Allan Horning rhorning@sonnenschein.com
Richard S. Florsheim rflorsheim@foley.com

Dated:  July 28, 2011                                              Richard W. Wieking, Clerk


By:     /s/ EJD Chambers
        Elizabeth Garcia
        Courtroom Deputy

11

Case No. 10-CV-02863-EJD
ORDER DENYING MOTION TO INTERVENE AND DENYING MOTION TO STAY