Gina A. Bibby (State Bar No. 242657)
**FOLEY & LARDNER LLP**
EMAIL: GBIBBY@FOLEY.COM
975 Page Mill Road
Palo Alto, CA  94304-1013
Telephone: (650) 856-3700
Facsimile:  (650) 856-3710

Ary Chang (State Bar No. 244247)
**FOLEY & LARDNER LLP**
EMAIL: ACHANG@FOLEY.COM
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130-3302
Telephone: (858) 847-6700
Facsimile:  (858) 792-6773

John C. Vetter (Admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
EMAIL: JVETTER@FOLEY.COM
One South Biscayne
Boulevard, Suite 1900
Miami, FL  33151
Telephone: (305) 382-8424
Facsimile:  (305) 482-8600

Richard S. Florsheim (Admitted *Pro Hac Vice*)
Cynthia J. Franecki (Admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**
EMAIL: RFLORSHEIM@FOLEY.COM
EMAIL: CFRANECKI@FOLEY.COM
777 E Wisconsin Avenue
Milwaukee, WI  53202-5306
Telephone: (414) 271-2400
Facsimile:  (414) 297-4900

Attorneys for Plaintiffs
AVAGO TECHNOLOGIES FIBER IP (SINGAPORE) PTE. LTD.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES FIBER IP (SINGAPORE) PTE. LTD.,<br><br>Plaintiff,<br><br>v.<br><br>IPTRONICS, INC. and IPTRONICS A/S,<br><br>Defendants. | Case No.:  5:10-CV-02863-EJD (PSG)<br><br>**PLAINTIFF AVAGO TECHNOLOGIES FIBER IP (SINGAPORE) PTE. LTD.'S NOTICE OF MOTION AND MOTION TO MODIFY THE PROTECTIVE ORDER; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>[REDACTED VERSION]<br><br>Judge:          Hon. Paul S. Grewal<br>Courtroom:   5, 4th Floor<br>Hearing Date:  November 1, 2011<br>Hearing Time:  10:00 am |

# TABLE OF CONTENTS

**Page(s)**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL SUMMARY ....................................................................................... 3

    A.   IPTRONICS MISAPPROPRIATED AVAGO'S TRADE SECRETS ........................ 3

    B.   DANESH MISAPPROPRIATED AVAGO TRADE SECRETS AND
        BREACHED HER AGREEMENT WITH AVAGO ..................................................... 4

III. DISCUSSION ....................................................................................................... 6

    A.   LEGAL STANDARD:  DISTRICT COURTS HAVE BROAD
        DISCRETION TO MODIFY PROTECTIVE ORDERS ........................................... 6

    B.   AVAGO IS ENTITLED TO ACCESS ITS OWN TRADE SECRETS ...................... 7

    C.   GOOD CAUSE AND EQUITIES MILITATE TOWARD MODIFYING
        THE PROTECTIVE ORDER ........................................................................... 8

    D.   PROPOSED MODIFICATION OF PROTECTIVE ORDER ................................... 10

IV.  CONCLUSION .................................................................................................. 18

SVCA_899444.4

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
  966 F.2d 470 (9th Cir. 1992) ............................................................................... 6

*CBS Interactive, Inc. v. Etilize, Inc.,*
  257 F.R.D. 195 (N.D. Cal. 2009) ................................................................. 6, 7, 9

*Foltz v. State Farm Mut. Auto. Ins. Co.,*
  331 F.3d 1122 (9th Cir. 2003) ............................................................................. 7

*In re Jenoptik AG,*
  109 F.3d 721 (Fed. Cir. 1997) ............................................................................. 9

*Olympic Refining Co. v. Carter,*
  332 F.2d 260 (9th Cir. 1964) .............................................................................. 6

*Oracle Corp. v. SAP AG,*
  No. C-07-01658 PJH (EDL), 2010 WL 545842 (N.D. Cal. Feb. 12, 2010) .................... 9

*Osband v. Woodford,*
  290 F.3d 1036 (9th Cir. 2002) ........................................................................ 6, 7

*Phillips ex rel. Estates of Byrd v. General Motors Corp.,*
  307 F.3d 1206 (9th Cir. 2002) ............................................................................. 6

*Seattle Times Co. v Rhinehart,*
  47 U.S. 20 (1984), 104 S.Ct. 2199 ...................................................................... 6

## RULES

Fed.R.Civ.P. 26 ......................................................................................................... 1

Fed.R.Civ.P. 26(c) ................................................................................................... 6, 7

Fed.R.Civ.P. 26(c)(7) ................................................................................................ 6

Fed.R.Civ.P. 30(b) .................................................................................................... 6

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT, that on November 1, 2011 at 10:00 a.m. or as soon thereafter as the matter made be heard in the above-entitled Court located in Courtroom 5, Fourth Floor of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, California 95113, Plaintiff Avago Technologies Fiber IP (Singapore) Pte. Ltd. ("Plaintiff" or "Avago") shall and hereby does move the Court, pursuant to Rule 26 of the Federal Rules of Civil Procedure, to modify the protective order entered in the above-captioned matter (the "Motion"). (*See* D.I. 77.)  Specifically, Avago seeks to modify Sections 7.1, 7.2, 7.3, and 9 of the Protective Order so an Avago representative is given access the limited category of information designated as Protected Material which underlie the trade secret misappropriation, breach of contract, and related causes of action to better manage such claims without being limited in the future by the Prosecution Bar and allowed to (1) share evidence of trade secret misappropriation with criminal prosecutors so the prosecutors could determine whether to use them in criminal proceedings; and (2) if necessary, use the limited category of information in civil claims against other parties in collateral proceedings. Further, Avago seeks an order confirming that (1) Avago representatives can access the documents or other information produced by any party or non-party that contain information belonging to Avago or otherwise already known to Avago (*e.g.*, Avago trade secrets); and (2) the Avago representative to whom such non-technical information is disclosed will not be barred under the Protective Order from prosecuting certain categories of patents and patent applications.

This Motion is based upon the Memorandum of Points and Authorities herein, the Declaration of Ary Chang filed herewith ("Chang Decl."), the pleadings and papers on file in this action, and such matters as the Court may take judicial notice or consider relevant.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendants IPtronics, Inc. and IPtronics A/S (collectively "IPtronics") produced information in this patent infringement action establishing that IPtronics, through its ███████ .

---

1

SVCA_899444.4

██████              and acting in concert with ████████████████████████████

████████████, has engaged in systematic efforts to misappropriate Avago's trade secrets.

The information further shows that, through its efforts, IPtronics unlawfully acquired and used

Avago's trade secrets. Avago also recently learned, through production by Danesh in response to a

subpoena, that, in breach of her contract with Avago, Danesh ████████████████████████

█████████████████████████████████████████████████████████████████████████████████.

Deposition testimony from Danesh revealed that ████████████████

████████████████████████████████████████████████████████████████████████████████. Not only

did these documents contain Avago's trade secrets, but hundreds of them are also privileged.

IPtronics has designated all of the information evidencing its misappropriation (which

includes Avago's own trade secret information) as "Highly Confidential – Attorneys' Eyes Only."

The Danesh documents have been similarly designated. The Protective Order limits Avago's use of

designated information to use in this and any action involving one or both of the patents-in-suit and

at least one party to this action and to any collection effort relative to this litigation. The Protective

Order further limits the people to whom Avago could disclose designated information and sets a

prosecution bar on those individuals.

In light of these facts, Avago requests prompt relief allowing Avago to use the limited subset

of information produced by IPtronics and other non-parties that is related to the trade secret

misappropriation, breach of contract, and related causes of action ("non-technical claims") to

protect Avago's trade secrets from further misuse and disclosure. First, Avago seeks modification of

the Protective Order so Avago could share the information relating to the trade secret

misappropriation claims with criminal prosecutors so the prosecutors could determine whether to

use such information in criminal proceedings. Avago also seeks modification so Avago could, if

necessary, use the limited subset of information related to its non-technical claims to make informed

decisions on pursuing a collateral civil action against additional parties without being limited in the

future by the Prosecution Bar. Second, Avago seeks an order confirming that Avago officers,

directors, and employees can access the limited subset of information containing Avago proprietary information without triggering the Prosecution Bar.

## II.     FACTUAL SUMMARY

This litigation began as a patent infringement case. However, in the course of ongoing discovery, additional facts have been discovered relating to the wrongful activities by IPtronics employees, including inducing or working in concert with Avago former employees, which have led Avago to seek to assert additional causes of action and which have given rise to the need for Avago to assess its options with respect to bringing collateral action against additional parties and/or pursuing criminal sanctions.

### A.     IPTRONICS MISAPPROPRIATED AVAGO'S TRADE SECRETS

IPtronics has produced approximately 900,000 pages of documents in this litigation. (*See* D.I. 81.)  Many, if not most, of these documents have been designated as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order. (Chang Decl., ¶ 2.)

In the course of reviewing the documents produced by IPtronics, Avago discovered evidence of, *inter alia*, trade secret misappropriation by IPtronics and other third parties. Specifically, Avago discovered evidence that IPtronics targeted, induced, and conspired with former Avago employees to misappropriate Avago trade secrets. For instance, IPtronics schemed █████████████████████████████████████████████████████████████████████ . Moreover, IPtronics also received and discussed Avago trade secrets from ████████████████ ████████████ .

Among the evidence of misappropriation found in IPtronics' production are:

- ██████████████████████████████████████ *(Id.* at ¶ 9.)
- ████████████████████████████████████████████████████████████████████████████████████████████████

SVCA_899444.4



(*Id.* at ¶ 10.)

(*Id.* at ¶ 11.)

(*Id.* at ¶ 12.)

(*Id.* at ¶ 16.)

Upon discovering the evidence of trade secret misappropriation as well as other wrongful activities by IPtronics and other non-parties, Avago moved the Court for an expedited hearing schedule on a motion for leave to file a second amended complaint to assert additional causes of action against IPtronics. (*See* D.I. 109.)   Although the Court denied the motion for expedited hearing, it issued a Scheduling Order which explicitly invited Avago to re-file or file an amended motion for leave to file a second amended complaint. (*See* D.I. 136.)

**B.    DANESH MISAPPROPRIATED AVAGO TRADE SECRETS AND BREACHED HER AGREEMENT WITH AVAGO**

On July 29, 2011, Avago served a subpoena on Danesh ("Danesh subpoena"), a former high-ranking Avago executive. (Chang Decl., ¶ 3, Ex. A.)   From June 2006 through September 2009, Danesh served as the Senior Vice President and General Manager of Avago's Fiber Optics Products Division ("FOPD") and reported directly to the Chief Executive Officer of Avago Technologies Limited, the Avago parent company. (*Id.* at ¶ 4.)   FOPD is the Avago business unit that has been and continues to be directly and negatively impacted by IPtronics' and Danesh's trade secret misappropriation as well as by IPtronics' unabated infringement of the patents-in-suit. (*See id.* at ¶¶ 6-7; *see also* D.I. 97 (Hall Declaration) & D.I. 121 (proposed Second Amended Complaint).)

As part of her contractual obligations to Avago, Danesh agreed to abide by the terms of Avago's confidentiality requirements, which include (1) keeping any Avago proprietary information or third-party confidential information in strict confidence and trust even after the termination of her employment agreement with Avago; and (2) promptly returning all Avago property at Avago's request or if her employment terminates and not retaining any reproductions of such property. (Chang Decl., ¶ 13.)

The Danesh subpoena sought production of relevant documents from Danesh as well as her testimony at a deposition. At the deposition on August 29, 2011, Danesh produced two DVDs of documents in addition to a stack of paper documents in response to the subpoena *duces tecum*. (*Id.* at ¶ 5.) In all, Danesh produced 42,925 documents, comprising 19 paper documents and 42,906 emails and attachments. (*Id.*) Twelve of the paper documents produced by Danesh contain confidential Avago information, including ████████████████████████████████████████ ████████████████████████████████████████████████████████████ (*Id.*, ¶ 6.) The other seven paper documents produced by Danesh contain IPtronics information. (*Id.*) The paper documents were concurrently produced to counsel for IPtronics by Danesh's counsel. The electronic documents on the two discs amounted to ███████████████████████████████████████████ ███████████████████████████████████████████████. (*Id.*, ¶ 7.) The documents comprised Danesh's day-to-day communications as Senior Vice President & General Manager of FOPD. (*Id.*) As such, the documents contained highly confidential Avago trade secrets and other proprietary information, including hundreds of documents containing information protected by the attorney-client privilege, the work product doctrine, common interest doctrine, and/or other generally applicable privilege or protection recognized by law. (*Id.*)

Counsel for Danesh testified that ██████████████████████████████████ ████████████████████████████████████████████████████████████████████████. (*Id.*, ¶ 15.) Danesh testified that █████████████████████ ██████████████████████. (*Id.*, ¶ 14.)

Upon discovering evidence establishing the extensiveness of Danesh's misappropriation of Avago's trade secrets, Avago issued a second subpoena on Danesh, this time for the production of Danesh's laptop computer and other electronic storage media for inspection, copying and testing. (*Id.* at ¶ 8, Ex. B.)

SVCA_899444.4

III.   **DISCUSSION**

A.   **LEGAL STANDARD:  DISTRICT COURTS HAVE BROAD DISCRETION TO MODIFY PROTECTIVE ORDERS**

District courts have broad discretion to tailor protective orders. *See* Fed.R.Civ.P. 26(c)(7). As explained by this Court,

> The Supreme Court has interpreted Federal Rule of Civil Procedure 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co.*, 47 U.S. at 36, 104 S.Ct. 2199 ("[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."). Accordingly, district courts have inherent authority to grant a motion to modify a protective order where 'good cause' is shown. *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). A party asserting good cause bears the burden to show that specific prejudice or harm will result if the motion is not granted. *Id.* at 1210-11.

*CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 201 (N.D. Cal. 2009); *see also* Report of Federal Courts Study Committee, 1990, p. 102 ("To reduce duplicative discovery, however, courts entering protective orders should be prepared to modify them to permit appropriate access to discovered information by litigants in other cases unless such information would not be discoverable in such cases.").

It is well-settled law in the Ninth Circuit that protective orders should be amended to allow use of the discovery in other proceedings. *See, e.g., Olympic Refining Co. v. Carter*, 332 F.2d 260 (9th Cir. 1964) ("neither Rule 30(b), nor any other rule or statute called to our attention, authorizes a district court to protect trade secrets and sensitive competitive information from such disclosure as is relevant to the subject matter involved in a pending action."); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) ("Ninth Circuit precedent strongly favors disclosure to meet the needs of parties in pending litigation."); *Osband v. Woodford*, 290 F.3d 1036, 1039 (9th Cir. 2002) ("A party subject to a protective order is generally free to return to the issuing court to seek

1    modification of the order."); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir.

2    2003) ("[The Ninth Circuit] strongly favors access to discovery materials to meet the needs of

3    parties engaged in collateral litigation."). "Allowing the fruits of one litigation to facilitate

4    preparation in other cases advances the interests of judicial economy by avoiding the wasteful

5    duplication of discovery." *Foltz*, 331 F.3d at 1131.

6           In the Ninth Circuit, a protective order may be modified or even vacated altogether for good

7    cause shown. *Osband v. Woodford*, 290 F.3d 1036, 1039 (9th Cir. 2002). "A good cause analysis

8    under Federal Rule of Civil Procedure 26(c) entails a balancing of the needs for discovery against

9    the need for confidentiality." *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal.

10   2009). The analysis considers (1) whether sufficient cause exists to protect such information from

11   being disclosed to the public; and (2) whether the reliance interests of the party opposing

12   modification outweighs the policy of avoiding duplicative discovery. *Id.* at 205-206.

13           **B.     AVAGO IS ENTITLED TO ACCESS ITS OWN TRADE SECRETS**

14          As an initial matter, Avago's trade secrets belong to Avago and the Protective Order does

15   not    bar Avago from receiving and using information that contains Avago trade secrets

16   notwithstanding any confidentiality designation by IPtronics, Danesh, or any others. (*See* D.I. 77,

17   Protective Order § 3) ("[T]he protections conferred by this Stipulation and Order do not cover . . .

18   (b) any information known to the Receiving Party [Avago] prior to the disclosure . . . ."); (*see id.* at

19   §§ 7.2(f) and 7.3(e)) (Avago may disclose designated information to "the author or recipient of a

20   document containing the information or a custodian *or other person who otherwise possessed or*

21   *knew the information*.") (emphasis added). Moreover, where such information rightfully belongs

22   and is already known to Avago, the Protective Order's Prosecution Bar should not apply to any

23   Avago representative who is given access to this limited amount of information.

24          As previously explained, some of the documents produced by IPtronics contains evidence of

25   IPtronics' misappropriation of Avago trade secrets. The limited number of documents that show

26   Avago trade secrets are not covered by the Protective Order despite *IPtronics* claiming any such

27   protection because Avago trade secrets were already known to Avago.

28

Notably, all of the information produced by Danesh on the two discs belong to Avago. Those documents contain Avago proprietary information and were copied and retained by Danesh without Avago's consent in breach of her contractual obligations to Avago. Many of the paper documents that were produced by Danesh also contain Avago proprietary information and originated from Avago. Therefore, these documents rightfully belong to Avago and Avago should not be constrained by the Protective Order from the ability to assess this information.

Accordingly, Avago seeks an order from the Court confirming that Avago representatives can access the portions of documents produced by IPtronics, Danesh, and any party or non-party that contain information belonging to Avago or otherwise already known to Avago and that any Avago representative with access to this limited set of information will not be governed by the Protective Order's Prosecution Bar.

## C.     GOOD CAUSE AND EQUITIES MILITATE TOWARD MODIFYING THE PROTECTIVE ORDER

Good cause exists for modifying the Protective Order. As explained above, IPtronics and Danesh have separately produced information in this action establishing that both IPtronics and Danesh have misappropriated Avago's trade secrets. The evidence also shows that IPtronics induced Danesh, a former high-ranking Avago executive, to divulge Avago trade secrets and other proprietary information to IPtronics to gain competitive advantage. ████████████████████ ████████████████████, Danesh provided IPtronics with certain Avago trade secrets. The Avago trade secrets disclosed by Danesh ████████████████████ ████████████████████████████████████████████████████ ████████████████.

Further, Danesh retained copies of ████████████████████ on her personal laptop computer when she left Avago's employ and ████████████████ ████████████. These documents not only contained Avago's highly sensitive business information and trade secrets, but many also contain privileged information.

8

SVCA_899444.4

1    In the instant case, the disclosure being sought is limited to the modification of Sections 7.1,

2    7.2, 7.3, and 9 of the Protective Order, which is necessary to allow Avago to protect its trade secrets

3    and other confidential information from being further misappropriated in civil and/or criminal

4    actions or, in the alternative, an addendum to the Protective Order that carves out limited disclosure

5    of information that is not related to the patent infringement in this case. *See CBS Interactive, Inc. v.*

6    *Etilize, Inc.*, 257 F.R.D. 195, 205 (N.D. Cal. 2009) (granting motion to modify protective order for

7    patent owner to use information gained through discovery to pursue claims for trade secret

8    misappropriation in state court against competitor and others). Further, any collateral proceedings

9    would clearly stem from the facts underlying IPtronics', Danesh's, and ████ misappropriation of

10    Avago's trade secrets as well as Danesh's breach of contract. The Protective Order in this litigation

11    should not shield Danesh from facing the consequences of her deliberate actions in misappropriating

12    Avago's trade secrets or breaching her contract. Equities also militate toward allowing the

13    modification where Avago is being harmed and continues to be harmed by IPtronics', Danesh's, and

14    ████ misappropriation of Avago's trade secrets as well as Danesh's breach of contract.

15    In light of the extent of IPtronics', Danesh's, and ████ misappropriation of Avago's trade

16    secrets, Avago seeks the opportunity to consider all avenues, whether through criminal or other civil

17    litigations, to protect its rights. The modification of the Protective Order will allow Avago to better

18    manage the case to determine whether to initiate collateral litigation and/or to share a limited subset

19    of information with criminal prosecutors, whether in the United States or overseas, if criminal

20    charges are appropriate. *See Oracle Corp. v. SAP AG*, No. C-07-01658 PJH (EDL), 2010 WL

21    545842, at *2 (N.D. Cal. Feb. 12, 2010) (allowing use of protected information for plaintiff to use in

22    consultation with foreign counsel); *accord In re Jenoptik AG*, 109 F.3d 721, 723 (Fed. Cir. 1997)

23    (holding that deposition testimony provided under protective order in American litigation could

24    properly be used before a German court in a related suit to enable the German court to have the

25    material before it so that it could apply its own rules regarding discovery). In fairness, Avago should

26    be allowed to protect its legal rights.

27

28

AVAGO MOTION TO MODIFY PROTECTIVE ORDER
CASE NO. 5:10-CV-02863-EJD

SVCA_899444.4

1    To allow Avago to better manage its non-technical claims, an Avago employee who is

2    charged with determining how to protect Avago's legal rights must be able to access and assess the

3    facts underlying such claims. It would be highly unfair and unduly prejudicial to Avago if it were

4    prohibited from viewing or otherwise accessing its own trade secrets and the misappropriation of

5    such trade secrets or breach of any contract with Avago. Avago would be hamstrung by having to

6    make decisions on how best to proceed with its litigations without the benefit of being able to

7    analyze any of the underlying facts.

8    **D.     PROPOSED MODIFICATION OF PROTECTIVE ORDER**

9    Section 7.1 of the Protective Order currently states:

10   Basic Principles. Any Protected Material obtained by any
11   Party from any person pursuant to discovery in this litigation or
     otherwise may be used only for purposes of preparation and
12   litigation of this matter, and may not be used for any other
     purpose, including but not limited to use in other litigations, use
13   for business purposes, or use for patent prosecution or for
     providing strategic patent prosecution advice other than
14   specifically provided for in this section of the Protective Order.

15   A Receiving Party may use Protected Material that is
16   disclosed or produced by another Party or by a Non-Party in
     connection with this case only for prosecuting, defending, or
17   attempting to settle (a) any action involving one or both of the
     Patents-in-Suit and/or their foreign counterpart patents and
18   involving at least one party to this action, (b) any bankruptcy
     proceeding involving the Designating Party, and/or (c) any
19   collection efforts relative to any judgment obtained in this
20   litigation. Protected Material, including documents and things,
     exchanged during this case shall not be used for drafting, filing
21   or prosecution of new or currently pending patent applications,
     or for reexamination and/or reissues on behalf of a Party to this
22   litigation that may have access to such Protected Material, as
     specified in the provisions of section 9 below (PROSECUTION
23   BAR). Such Protected Material may be disclosed only to the
     categories of persons and under the conditions described in this
24   Order. When the litigation has been terminated, a Receiving
25   Party must comply with the provisions of section 16 below
     (FINAL DISPOSITION).

26

27

28

10

SVCA_899444.4

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

To ensure compliance with this Section 7.1, Avago believes it is appropriate to seek modification of the Protective Order prior to initiating any collateral litigation. Avago's proposed modification is as follows:

Basic Principles. Any Protected Material obtained by any Party from any person pursuant to discovery in this litigation or otherwise may be used only for purposes of preparation and litigation of this matter, and may not be used for any other purpose, including but not limited to use in other litigations, use for business purposes, or use for patent prosecution or for providing strategic patent prosecution advice other than specifically provided for in this section of the Protective Order. **Any Protected Material that is related to trade secret misappropriation, breach of contract, and other non-technical claims may be used for the purposes of preparing for and litigating any other actual or potential matter, whether civil or criminal, which is not related to the patent infringement claims in the current matter.**

A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle (a) any action involving one or both of the Patents-in-Suit and/or their foreign counterpart patents and involving at least one party to this action, (b) any bankruptcy proceeding involving the Designating Party, and/or (c) any collection efforts relative to any judgment obtained in this litigation. **Protected Material received during this case that is related to trade secret misappropriation, breach of contract, and other non-technical claims, may also be used for prosecuting, defending, or attempting to settle any other actual or potential matter, whether civil or criminal, which is not related to the patent infringement claims in the current matter.** Protected Material, including documents and things, exchanged during this case **(except for Protected Material related to trade secret misappropriation, breach of contract, and other non-technical claims)** shall not be used for drafting, filing or prosecution of new or currently pending patent applications, or for reexamination and/or reissues on behalf of a Party to this litigation that may have access to such Protected Material, as specified in the provisions of section 9 below (PROSECUTION BAR). Such Protected Material may be

11

SVCA_899444.4

disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 16 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

Section 7.2 of the Protective Order currently states:

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action[1];

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

(g) the Designating parties' deposition or trial witnesses.

Avago's proposed modification to Section 7.2 is as follows:

7.2 <u>Disclosure of "CONFIDENTIAL" Information or Items</u>. Unless otherwise ordered by the court or permitted in writing by

SVCA_899444.4

the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action[1];

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(g) the Designating parties' deposition or trial witnesses.

**A Receiving Party may also disclose any information or item designated "CONFIDENTIAL" that is related to the Receiving Party's trade secret misappropriation, breach of contract, and other related claims only to:**

**(h) the appropriate criminal prosecutors in the United States and/or overseas;**

**(i) the Outside Counsel of Record in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims[2];**

**(j) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims and who have signed the**

13

1  "**Acknowledgment and Agreement to Be Bound**" (**Exhibit A**);

2

3  **(k) Experts of the Receiving Party to whom disclosure is reasonably necessary for any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).**

4

5

6  Avago proposes leaving footnote 1 unchanged.  Avago proposes inserting a new footnote 2

7  after Section 7.2(i), which would read:

8  **The Receiving Party's Outside Counsel of Record in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims may disclose any information or item designated 'CONFIDENTIAL' only to employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims.**

9

10

11

12

13

14  With the proposed addition of Avago's new footnote 2, *supra*, the former footnote 2 in the

15  Proposed Order will be re-numbered as the new footnote 3 but its content unchanged.

16  Correspondingly, Section 7.3 of the Protective Order currently states:

17  7.3   Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

18

19

20

21

22  (a) the Receiving Party's Outside Counsel of Record in this action[2];

23

24  (b) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a), below, have been followed;

25

26

27  (c) the court and its personnel;

28

14

SVCA_899444.4

(d) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(e) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

(f) the Designating parties' deposition or trial witnesses.

Avago's proposed modification to Section 7.3 is as follows:

7.3    Disclosure    of    "HIGHLY    CONFIDENTIAL    –   ATTORNEYS'    EYES    ONLY"    and    "HIGHLY   CONFIDENTIAL – SOURCE CODE" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to:

(a) the Receiving Party's Outside Counsel of Record in this action[3];

(b) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a), below, have been followed;

(c) the court and its personnel;

(d) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(e) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

(f) the Designating parties' deposition or trial witnesses.

**A Receiving Party may also disclose any information or item designated "HIGHLY CONFIDENTIAL –**

15

SVCA_899444.4

ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that is related to the Receiving Party's trade secret misappropriation, breach of contract, and other related claims only to:

(g) the appropriate criminal prosecutors in the United States and/or overseas;

(h) an officer, director, or employee (including House Counsel) of the Receiving Party managing Receiving Party's trade secret misappropriation, breach of contract, and related claims and who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(i) the Outside Counsel of Record in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims[4];

(k) Experts of the Receiving Party to whom disclosure is reasonably necessary for any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

Avago proposes inserting a new footnote 4 to Section 7.3(i), which would read:

The Receiving Party's Outside Counsel of Record in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" only to employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for in any actual or potential collateral action related to the trade secret misappropriation, breach of contract, and related claims.

Section 9 of the Protective Order, entitled "Prosecution Bar," currently states:

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to laser drivers (including but not limited to VCSEL drivers), transimpedance amplifiers, parallel optical interconnects, and

optical communication systems (using VCSELs), including without limitation the Patents-in-Suit and any patent or application claiming priority to or otherwise related to the Patents-in-Suit, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office"). For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims[4]. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a Party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination) nor does it include sharing work product based on information and material obtainable from asserted public prior art. This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.

The former footnote 4 (now footnote 6) to Section 9 states: "Prosecution includes, for example, original prosecution, reissue and reexamination proceedings."

Avago's proposed adding the following paragraph to Section 9:

**The Prosecution Bar does not apply where the information designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information contains information that is not related to the patent infringement claims, *i.e.*, information related to trade secret misappropriation, breach of contract, or other similar claims.**

Such modifications would not change any of the confidentiality designations or other obligations with respect to such designations under the Protective Order and, at the same time, would recognize the parties' ability to pursue claims outside of this litigation where necessary to protect their legal rights. (*See* Chang Decl., ¶ 17, Ex. C.)

In the alternative, Avago proposes the following proposed addendum to the Protective Order:

Information based upon or derived from Protected Material designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE

CODE" that is related to the possible trade secret misappropriation, breach of contract, and related claims can be disclosed to Floyd Anderson, an in-house attorney for Avago, in addition to the categories of persons permitted elsewhere in the Protective Order, and can be used for the preparation for or commencement of other litigation, whether civil or criminal. Information based upon or derived from Protected Material designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that is related to the possible trade secret misappropriation and related claims can be disclosed to the appropriate criminal prosecutors in the United States and/or abroad to allow the prosecutor(s) to determine whether to use such information in any criminal proceedings. Any individual who receives access to such Protected Material that is not related to the patent infringement claims in this case shall not be prohibited by the Prosecution Bar in the Protective Order from prosecuting certain patents or patent applications. Nothing in this Protective Order prohibits disclosure of Protected Material to the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

Such addendum is narrowly tailored to allow Avago access to the limited amount of information that relates to the causes of action not related to the patent infringement claims in this case. Further, the modification would not change any of the confidentiality designations or other obligations with respect to such designations under the Protective Order and, at the same time, would recognize the parties' ability to pursue claims outside of this litigation where necessary to protect their legal rights.

## IV.   CONCLUSION

For each and all of the foregoing reasons, Avago respectfully requests that the Court grant this Motion and:

(1) modify the Protective Order to allow Avago to access the limited category of information which underlie the trade secret misappropriation, breach of contract, and related causes of action to better manage such claims without triggering the Prosecution Bar; and

SVCA_899444.4

(2) modify the Protective Order to allow Avago to share evidence of trade secret misappropriation with criminal prosecutors so the prosecutors could determine whether to use them in criminal proceedings;

(3) confirm that Avago representatives can access the documents or other information produced by any party or non-party that contain information belonging to Avago or otherwise already known to Avago (*e.g.*, Avago trade secrets); and

(4) confirm that Avago representatives to whom such non-technical information is disclosed will not be barred under the Protective Order from prosecuting patents and patent applications as described in the Prosecution Bar.

Respectfully submitted

Foley & Lardner LLP

Dated: September 26, 2011      By:    */s/ Ary Chang*

John C. Vetter
Richard S. Florsheim
Cynthia J. Franecki
Gina A. Bibby
Ary Chang
ATTORNEYS FOR PLAINTIFF
AVAGO TECHNOLOGIES FIBER IP
   (SINGAPORE) PTE. LTD.

AVAGO MOTION TO MODIFY PROTECTIVE ORDER
CASE NO. 5:10-CV-02863-EJD

SVCA_899444.4