1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S. INC., ET AL., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> IPTRONICS, INC., ET AL. ) <br> ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> ) <br> ————————————————————— ) | Case No.: 5:10-CV-02863-EJD <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT** <br><br> **[Re: Docket No. 276, 313, 324]** |

Presently before the court are Defendants IPtronics, Inc. and IPtronics A/S's (collectively "Defendants") Motion to Stay and Motion to Dismiss Plaintiffs' Second Amended and Supplemental Complaint, and Plaintiffs Avago Technologies U.S. Inc., Avago Technologies General IP (Singapore) PTE. Ltd., Avago Technologies Trading Ltd., Avago Technologies International Sales, PTE. Ltd., and Avago Technologies Fiber IP (Singapore) PTE. Ltd.'s (collectively, "Plaintiffs") Motion to Strike Defendants' First Amended Answer and Counterclaims to Second Amended and Supplemental Complaint. The court found these matters suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b) and previously vacated the hearing. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Having fully reviewed the parties' briefing, and for the foregoing reasons, the court GRANTS Defendants'

Motion to Stay, and DENIES Defendants' Motion to Dismiss and Plaintiffs' Motion to Strike as Moot.

## I.   BACKGROUND

Plaintiff Avago Technologies Fiber IP (Singapore) Pte. Ltd. ("Avago Fiber IP") filed this lawsuit on June 29, 2010, alleging infringement of two of its U.S. patents: U.S. Patent Nos. 5,359,447 ("the '447 patent") and 6,947,456 ("the '456 patent"). Dkt. No. 1.  Defendants counterclaimed, seeking a declaratory judgment of invalidity and noninfringement of both patents. Dkt. No. 23.    Later, on May 26, 2011, Avago Fiber IP executed a series of license agreements through which some of its rights to the patents-in-suit were purportedly transferred to several affiliated entities: Avago Technologies General IP (Singapore) Pte. Ltd., Avago Technologies Trading Ltd., Avago Technologies International Sales Pte. Ltd., and Avago Technologies U.S. Inc. (collectively, "the Avago Licensees.")

On June 17, 2011 Avago Fiber IP moved for leave to file a Second Amended Complaint ("SAC"), and on October 21, 2011, it moved to file a Second Amended and Supplemental Complaint ("SASC"), joining the Avago Licensees and adding five business tort claims.  Dkt. No. 172.  While this motion was pending, the court held a claim construction hearing, and issued its claim construction order.  Dkt. No. 218, 258.  With leave of the court, Avago Fiber IP filed its SASC on September 18, 2012, joining the Avago Licensees as plaintiffs, and adding five business tort claims for: (1) false advertising; (2) misappropriation of trade secrets; (3) violation of California Business and Professions Code  17200; (4) intentional interference with contractual relations; and (5) unjust enrichment.  Dkt. Nos. 259, 268.

Less than one week later, Avago Fiber IP, Avago General IP, and Avago U.S. filed a complaint at the International Trade Commission ("ITC") pursuant to 19 U.S.C. § 1337, alleging infringement of the '456 patent by IPTronics Inc., IPtronics A/S, and several other entities.  See In re Matter of Certain Optoelectronic Devices for Fiber OIptic Commc'ns, Inv. No. 337-TA-860.  The complaint also alleged infringement of Avago's U.S. Patent No. 5,596,595 ("the '595 patent") against several entities, but not against IPTronics.  The ITC instituted an investigation, naming

Case No.: 5:10-CV-02863-EJD
ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT

1    IPtronics as a respondent.  On December 6, 2012, Administrative Law Judge ("ALF") Theodore R.

2    Essex issued an order setting a target date of sixteen months, i.e., February 28, 2014. Decl. of Ary

3    Chang ("Chang Decl."), Ex. F.

4    **II.      LEGAL STANDARD**

5          When parallel actions are proceeding before a district court and the International Trade

6    Commission, 28 U.S.C. § 1659 requires the district court to stay "any claim that involves the same

7    issues involved in the proceeding before the Commission" until the "determination of the

8    Commission becomes final" upon request by "a party to a civil action that is also a respondent in

9    the proceedings before the [ITC]."

10          District courts also have inherent authority to stay proceedings before them.  "The power to

11   stay proceedings is incidental to the power inherent in every court to control the disposition of the

12   causes on its docket with economy of time and effort for itself, for counsel, and for litigants."

13   Landis v. No. Am. Co., 299 U.S. 248, 254 (1936).  This discretionary power can extend both to

14   patent claims and non-patent claims that are related to patent claims asserted in a parallel action.

15   See Zenith Elecs., LLC v. Sony Corp., No. 11-CV-02439, 2011 WL 2982377 *3-4 (N.D. Cal. July

16   22, 2011) ("Congress explicitly intended that district courts should consider using their

17   discretionary power to stay patent infringement litigation that is related to, but not duplicative of,

18   an action before the ITC"); Epistar Corp. v. Philips Lumileds Lighting Co., LLC, No. 07-CV-5194,

19   2008 WL 913321 *3 (N.D Cal. Apr. 2, 2008) (staying a breach of contract claim because it

20   overlapped with plaintiff's infringement claim).  In determining whether to grant a discretionary

21   stay, the district court must consider "the possible damage which may result from the granting of a

22   stay, the hardship or inequity which a party may suffer in being required to go forward, and the

23   orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and

24   questions of law which could be expected to result from a stay." CMAX, Inc. v. Hall, 300 F.2d

25   265, 268 (9th Cir. 1962).

26

27

28

Case No.: 5:10-CV-02863-EJD
ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.    DISCUSSION

Because the '456 patent claims are covered by the ITC Action, Defendants' Motion to Stay is GRANTED as to those claims.  The court is left to consider whether to grant a discretionary stay as to the '447 patent and the business tort claims.

#### a.  Possible Harm in Granting a Stay

Plaintiffs argue that they will suffer harm should a stay issue because such a stay could last up to thirty-three months, because the patent-in-suit would expire during this delay, and because Defendants may not be able to pay a damage award should this case be delayed.  Plaintiffs further argue that they should not be required suffer such harm because the '447 patent and the business tort claims are not related to the ITC proceedings.

Defendants respond that they only seek a stay until the ALJ issues his initial determination, and as such the stay will likely only last about twelve months.  Furthermore the Defendants argue that Plaintiffs' alleged harm of the expiration of the patent-in-suit is a red herring because the patent-in-suit will expire even before the present case, as scheduled, reaches trial.  As to the relationship between the present claims and those in the ITC investigation, Defendants admit that the '447 patent is not at issue in the ITC investigation, but points out that that investigation concerns the exact same device as at issue here, that the '447 patent and the '595 patent (at issue in the ITC investigation) share two inventors, that the patents at issue both in this case and in the ITC investigation are commonly owned, which may raise standing and licensing issues, and that Plaintiffs added the business tort claims to this case because information discovered in the present case provided the foundation for those claims.  Defendants further argue that the close timing of the filing of Plaintiffs' SASC and Plaintiffs' filing of the ITC investigation suggests that Plaintiffs added the business tort claims to this case as a hedge against the court's staying the action in its entirety.  As to the Defendants' ability to pay a damages award, Defendants suggest that Plaintiffs' argument is based on stale information.

Though this litigation is already well underway, the harm imposed by a stay to Plaintiffs is minimal and largely of their own making.  Plaintiffs chose to file an ITC investigation fairly late in

4

Case No.: 5:10-CV-02863-EJD
ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT

this litigation knowing that in so doing, they would spread Defendants' financial resources even thinner and afford Defendants an opportunity to request both a mandatory and a discretionary stay from the court. That Defendants pursued this option does not constitute harm to Plaintiffs. Defendants have demonstrated that the '447 claims and the business tort claims are at least somewhat related to the claims at issue in the ITC investigation. Plaintiffs have failed to identify any specific continuing severe harm it may suffer should a stay issue that could not ultimately be rectified by a damages award. Even if such harm did exist, Defendants have attempted to minimize it by requesting a discretionary stay only until the ITC issues its initial determination, rather than demanding a stay until the final resolution of that investigation. Therefore, the court finds that this factor weighs slightly in favor of a stay.

**b.  Possible Hardship to Defendants without a Stay**

Defendants argue that they would suffer considerable hardship should this court not issue a stay because of the potential for significantly duplicative discovery and because, as a small company, Defendants will be overwhelmed should they be required to defend themselves both in this court and in the ITC simultaneously. Defendants request a stay only until the ITC issues its initial determination to allow them to focus their limited resources during "the period of the most intense effort at the ITC." Dkt. No. 334 at 3:18-19. The court notes the aggressive pace and demands of an ITC investigation, and finds that under the circumstances presented here, Defendants would face a hardship without a stay. Therefore, this factor weighs in favor of a stay.

**c.  Judicial Economy**

Because the '456 patent claims are stayed as of right, the court faces the decision of allowing this litigation to proceed on two tracks, or waiting twelve months to enable this litigation to go forward on one. In the event the court does not issue a stay, the present case will proceed to trial on the '447 patent and the business tort claims. Later, after the ITC investigation concludes, litigation in this court may be renewed as to the '456 patent. A dual schedule such as the one presented here may require duplicative discovery, two rounds of expert reports, two rounds of dispositive motions, and ultimately, two trials. Because the ITC investigation relates to the present

5

Case No.: 5:10-CV-02863-EJD
ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT

1    case, several issues of proof may stand to be clarified by the ITC's determination.  Given this

2    relationship and the court's already impacted schedule, the court finds that judicial economy will

3    be served by having this case go forward in its entirety. Therefore, this factor weighs in favor of a

4    stay.

5    **IV.    ORDER**

6          For the foregoing reasons, the Court GRANTS Defendants' Motion to Stay.  Defendants'

7    Motion to Dismiss and Plaintiffs' Motion to Strike are therefore DENIED as moot.  This action

8    shall be stayed in its entirety until the ALJ issues his initial determination in the ITC investigation.

9    Claims relating to the '456 patent shall continue to be stayed until final resolution of the ITC

10   investigation.  Within 10 days of the ALJ's initial determination, the parties shall notify the court

11   of the initial determination, and request that this action be scheduled for a Case Management

12   Conference.

13   **IT IS SO ORDERED**

14   Dated: February 15, 2013

15

16                                                          EDWARD J. DAVILA
                                                            United States District Judge
17

18

19

20

21

22

23

24

25

26

27

28

Case No.: 5:10-CV-02863-EJD
ORDER GRANTING DEFENDANTS' MOTION TO STAY; DENYING DEFENDANTS'
MOTION TO DISMISS AND PLAINTIFFS' MOTION TO STRIKE AS MOOT

**United States District Court**
For the Northern District of California