Shawn E. McDonald (State Bar No. 237580)
**FOLEY & LARDNER LLP**
EMAIL: SEMCDONALD@FOLEY.COM
975 Page Mill Road
Palo Alto, CA  94304-1013
Telephone: (650) 856-3700
Facsimile:  (650) 856-3710

Nancy L. Stagg (State Bar No. 157034)
Ary Chang (State Bar No. 244247)
**FOLEY & LARDNER LLP**
EMAIL:NSTAGG@FOLEY.COM
EMAIL: ACHANG@FOLEY.COM
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130
Telephone: (858) 847-6700
Facsimile:  (858) 792-6773

John C. Vetter (Admitted *Pro Hac Vice*)          Richard S. Florsheim (Admitted *Pro Hac Vice*)
**FOLEY & LARDNER LLP**                           **FOLEY & LARDNER LLP**
EMAIL: JVETTER@FOLEY.COM                          EMAIL: RFLORSHEIM@FOLEY.COM
Two South Biscayne Boulevard, Suite 1900          777 E Wisconsin Avenue
Miami, FL  33131                                  Milwaukee, WI  53202-5306
Telephone: (305) 382-8424                         Telephone: (414) 271-2400
Facsimile:  (305) 482-8600                        Facsimile:  (414) 297-4900

Attorneys for Plaintiffs
AVAGO TECHNOLOGIES U.S. INC.,
AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE. LTD.,
 AVAGO   TECHNOLOGIES   TRADING   LTD.,   AND   AVAGO
TECHNOLOGIES INTERNATIONAL SALES PTE. Ltd.,

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES U.S. INC., AVAGO TECHNOLOGIES GENERAL IP (SINGAPORE) PTE. LTD., AVAGO TECHNOLOGIES TRADING LTD., AND AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD., <br><br> Plaintiffs, <br><br> v. <br><br> IPTRONICS INC., MELLANOX TECHNOLOGIES DENMARK APS (f/k/a IPTRONICS A/S), MELLANOX TECHNOLOGIES, INC., AND MELLANOX TECHNOLOGIES LTD., <br><br> Defendants. | Case No.:  5:10-CV-02863-EJD (PSG) <br><br> **CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT FOR:** <br><br> 1. **PATENT INFRINGEMENT;** <br> 2. **VIOLATION OF LANHAM ACT §43(A);** <br> 3. **MISAPPROPRIATION OF TRADE SECRETS;** <br> 4. **UNFAIR COMPETITION;** <br> 5. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND** <br> 6. **UNJUST ENRICHMENT** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]** |

Plaintiffs Avago Technologies U.S. Inc. ("Avago US"),  Avago Technologies General IP (Singapore) Pte. Ltd. ("Avago General IP"), Avago Technologies Trading Ltd. ("Avago Trading"), and Avago Technologies International Sales Pte. Ltd. ("Avago Sales"), (together, "Plaintiffs" or "Avago"), by their undersigned attorneys, and for their complaint against the captioned Defendants, Plaintiffs aver as follows:

## NATURE OF THIS ACTION

1.       This is a civil action arising in part under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, and, in particular, 35 U.S.C. § 271.  Plaintiffs seek relief from Defendants' infringement of Plaintiffs' patent rights under United States Patent Nos. 5,359,447 and 6,947,456 as set forth more fully below.

2.       This is a civil action arising in part under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051-1141 (the "Lanham Act"), and in particular 15 U.S.C. § 1125 (§ 43(a) of the Lanham Act), as it relates to the IPtronics Inc.'s and Mellanox Technologies Denmark ApS, formerly known as IPtronics A/S ("Mellanox Technologies Denmark") (collectively, "the IPtronics Defendants")'s false descriptions or representations, as also set forth more fully below.

3.       This action also asserts a substantial and related claim for misappropriation of trade secrets, which arises under California's Uniform Trade Secrets Act §§3426 *et seq.*, as it relates to the IPtronics Defendants' trade secrets violations, asserts a substantial and related claim for unfair competition, which arises under California Business and Professions Code §§17200 *et seq.*, as it relates to the IPtronics Defendants' unlawful, unfair or fraudulent business practices, and asserts substantial and related claims for intentional interference with prospective economic advantage and unjust enrichment, as it relates to the IPtronics Defendants' wrongful conduct, as also set forth more fully below.

## JURISDICTION

4.       This is a civil action asserting claims for patent infringement, violations of § 43 of the Lanham Act, and substantial claims for unfair competition, misappropriation of trade secrets, intentional interference with prospective economic advantage and unjust enrichment that are so

1

4817-8712-16941

related to the patent and Lanham Act claims as to form part of the same case or controversy under Article III of the United States Constitution.  Accordingly, this Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b) and/or 1367(a).

5.     This Court has personal jurisdiction over Defendant IPtronics Inc. which resides within this Judicial District, does business within the State of California and within this Judicial District, and has committed acts of infringement within this Judicial District.

6.     This Court has personal jurisdiction over Defendant Mellanox Technologies Denmark, which has consented to jurisdiction and does business within the State of California and within this Judicial District, and has committed acts of infringement within this Judicial District and/or has advertised or otherwise promoted its products and placed its products within the stream of commerce with the expectation and/or knowledge that such products would be purchased by customers and/or used by customers within this Judicial District and pursuant to California Code of Civil Procedure § 410.10, as set forth more fully below.

7.     This Court has personal jurisdiction over Defendant Mellanox Technologies, Inc. which resides within this Judicial District, does business within the State of California and within this Judicial District, and has committed acts of infringement within this Judicial District.

8.     This Court has personal jurisdiction over Defendant Mellanox Technologies Ltd., which has committed acts of infringement within this Judicial District and/or has advertised or otherwise promoted its products and placed its products within the stream of commerce with the expectation and/or knowledge that such products would be purchased by customers and/or used by customers within this Judicial District and pursuant to California Code of Civil Procedure § 410.10, as set forth more fully below.

## **VENUE**

9.     Venue is proper in this Judicial District at least pursuant to 28 U.S.C. §§ 1391(b) and (d) and 1400(b) because, upon information and belief, various acts and transactions constituting at least a substantial portion of the claims arose in this Judicial District.  Venue is

4817-8712-16941

also proper in this Judicial District because Defendants are subject to personal jurisdiction in this Judicial District pursuant to 28 U.S.C. § 1391(c).

**INTRADISTRICT ASSIGNMENT**

10.     Pursuant to Civil L.R. 3-2(c), this is an Intellectual Property Action and is subject to district-wide assignment.

**THE PARTIES**

11.     Plaintiff Avago US is a corporation organized under the laws of the State of Delaware and having a principal place of business at 350 West Trimble Road, Building 90, San Jose, California 95131-1008, U.S.A.

12.     Plaintiff Avago General IP is a corporation organized under the laws of Singapore and having a principal place of business at No. 1 Yishun Avenue 7, Singapore 768923.

13.     Plaintiff Avago Trading is a corporation organized under the laws of Mauritius and having a principal place of business at 4th Floor, IBL House, Caudan, Port Louis, Mauritius.

14.     Plaintiff Avago Sales is a corporation organized under the laws of Singapore and having a principal place of business at 8 Cross Street, #11-00 PWC Building, Singapore 048424.

15.     Plaintiffs are subsidiaries of Avago Technologies Ltd.  Avago Technologies Ltd. is co-headquartered, and has a subsidiary (Plaintiff Avago US) that conducts research and development, sales and marketing of products in the United States covered by the patents asserted herein, both having a place of business within this Judicial District at 350 West Trimble Road, Building 90, San Jose, California 95131, U.S.A.

16.     Defendant IPtronics Inc. is a corporation organized and existing under the laws of the state of Delaware.  From the date of the filing of the original Complaint in this Action (D.I. 1) to 2014, IPtronics Inc. had its principal place of business at 1370 Willow Road, 2nd Floor, Menlo Park, California 94025, U.S.A., within this Judicial District.

17.     Defendant Mellanox Technologies Denmark, is a corporation organized and existing under the laws of the Kingdom of Denmark, having its principal place of business at Ledreborg Allé 130B, 4000 Roskilde, Denmark.

4817-8712-16941

18.     Defendant IPtronics Inc. is a wholly owned subsidiary of Defendant Mellanox Technologies Denmark.

19.     Defendant Mellanox Technologies, Inc. is a corporation organized and existing under the laws of the state of California, having its principal place of business at 350 Oakmead Parkway, Suite 100, Sunnyvale, CA 94085, U.S.A., within this Judicial District.

20.     Defendant Mellanox Technologies, Ltd. is an Israeli company with its principal place of business at Beit Mellanox Yokneam 2069200 Israel.

21.     Mellanox Technologies, Ltd.'s business headquarters are in Sunnyvale, California, within this Judicial District.

22.     Defendant Mellanox Technologies, Inc. is a wholly owned subsidiary of Defendant Mellanox Technologies, Ltd.

23.     Mellanox Technologies, Ltd. completed its acquisition of Mellanox Technologies Denmark, then known as IPtronics A/S, a Defendant in this Action, on July 1, 2013.

24.     Defendants maintain a website promoting their VCSEL driver, transimpedance and limiting amplifier products and active optical cable products ("the accused products") that is accessible in the United States, including in this Judicial District.

25.     Defendants solicit orders for, and/or offer to sell, and/or sell, the accused products to, or on behalf of, entities in the United States, including entities located within this Judicial District.

26.     Defendants export, or arrange for and/or direct the export of the accused products to, or on behalf of entities located in the United States, including entities located within this Judicial District.

27.     Mellanox Technologies, Inc. and Mellanox Technologies, Ltd. (collectively, "he Mellanox Defendants"), or at least Mellanox Technologies, Inc., maintain a warehouse in Burlingame, California, within this Judicial District, in which accused products are stored.

28.     Defendants know, and/or have the expectation and/or understanding that all of its VCSEL driver products are sold for use in combination with vertical cavity surface emitting lasers ("VCSELs") in United States, including at least this Judicial District.

4817-8712-16941

29.     Defendants describe their laser driver products as "VCSEL drivers" and thus know, and/or have the expectation and/or understanding that these accused products are sold, and/or used in combination with VCSELs, in the United States, including at least this Judicial District.

30.     Plaintiffs are informed and believe and, on that basis, allege that Defendant Mellanox Technologies Denmark imports VCSEL driver products and/or transimpedance and limiting amplifier products into the United States for sale in the United States.

31.     Plaintiffs are informed and believe and, on that basis, allege that the conduct of Defendant Mellanox Technologies Denmark as alleged herein has been systematic and continuous within the Northern District of California.

32.     Plaintiffs are informed and believe and, on that basis, allege that Defendant IPtronics Inc. offers for sale, sells, imports, sells after importation, and/or arranges for the importation for sale of VCSEL driver products and/or transimpedance and limiting amplifier products based from its location within the Northern District of California.

33.     Plaintiffs are informed and believe and, on that basis, allege that Defendant Mellanox Technologies, Ltd. imports active optical cable products into the United States for sale in the United States.

34.     Plaintiffs are informed and believe and, on that basis, allege that the conduct of Defendant Mellanox Technologies, Ltd. as alleged herein has been systematic and continuous within the Northern District of California.

35.     Plaintiffs are informed and believe and, on that basis, allege that Defendant Mellanox Technologies, Inc. offers for sale, sells, imports, sells after importation, and/or arranges for the importation for sale of active optical cable products based from its location within the Northern District of California.

**PLAINTIFFS' U.S. PATENT NO. 5,359,447**

36.     United States Letters Patent No. 5,359,447, entitled "Optical Communication with Vertical-Cavity Surface-Emitting Laser Operating in Multiple Transverse Modes," duly and legally issued on October 25, 1994.  A true and correct copy of U.S. Patent No. 5,359,447 is

5

attached hereto as Exhibit 1.  Following a reexamination of U.S. Patent No. 5,359,447, the United States Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate (8896th), Number US 5,359,447 C1, on March 13, 2012, confirming the validity of all 6 original claims and allowing 16 additional claims.  A true and correct copy of *Ex Parte* Reexamination Certificate (8896th) Number US 5,359,447 C1 is attached hereto as Exhibit 2.  U.S. Patent No. 5,359,447, together with *Ex Parte* Reexamination Certificate (8896th) Number US 5,359,447 C1, shall hereinafter be referred to as the "'447 Patent."

37.   Plaintiff Avago General IP is the owner by assignment of all rights, title and interest in the '447 patent, including the right to sue and recover for past infringement.

38.   Plaintiffs Avago Trading, Avago Sales, and Avago US received their rights to the '447 patent on May 26, 2011 through a series of inter-company licenses.

39.   Plaintiff Avago Trading is the exclusive licensee in the U.S., as per a licensing agreement with Avago General IP, with rights to reproduce, perform, display, transmit, distribute, use, make, have made, import, offer to sell, sell and otherwise market any and all products incorporating the '447 patent.

40.   Plaintiff Avago Sales is the exclusive worldwide distributor, as per a limited risk distributorship agreement with Avago Trading, with the right to advertise, promote, instruct customers, implement marketing, distribute and sell any and all products incorporating the '447 patent.

41.   Plaintiff Avago US is the exclusive U.S. distributor, as per a limited risk distributorship agreement with Avago Sales, with the right to advertise, promote, instruct customers, implement marketing, distribute and sell any and all products incorporating the '447 patent.

42.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants had knowledge of the '447 patent prior to the filing of this civil action.  In the alternative, the filing of this civil action constituted notice of Plaintiffs' patent rights.

43.   A vertical-cavity, surface-emitting laser is referred to as a VCSEL.

4817-8712-16941

44.     A plurality of VCSELs arranged in rows and/or columns is referred to as a VCSEL array.

45.     The '447 patent relates in general terms to an optical communication network which includes a VCSEL, a power supply providing a current such that the VCSEL operates in multiple transverse modes, and a multimode optical medium optically coupled to the VCSEL to carry an optical signal from the VCSEL to a receiver.

46.     Plaintiffs are informed and believe and, on that basis, allege that, within the six years preceding the filing of the original Complaint in this action (D.I. 1), and continuing from the filing of the original Complaint to the present time, the IPtronics Defendants advertised for sale, offered for sale, imported and/or sold within the United States various driver circuits for VCSELs for use in optical communication networks including, by way of example and not by way of limitation as to infringing products, IPVD12G011 and IPVD3x4 VCSEL drivers.

47.     Plaintiffs are informed and believe and, on that basis, allege that, within the six years preceding the filing of the original Complaint in this action (D.I. 1), and continuing from the filing of the original Complaint to the present time, the IPtronics Defendants advertised for sale, offered for sale, imported and/or sold within the United States various components for use in optical communication networks including by way of example and not by way of limitation as to infringing products, IPTA12G011 and IPTA3x4 transimpedance and limiting amplifiers.

48.     Plaintiffs are informed and believe and, on that basis, allege that, the Mellanox Defendants  advertised for sale, offered for sale, imported and/or sold within the United States active optical cable products, at least some of which include the VCSEL drivers and transimpedance and limiting amplifiers described in paragraphs 46 and 47 above and sold by the IPtronics Defendants.  These active optical cable products include, by way of example and not by way of limitation as to infringing products, MC2207310, MC2210310, and MC2206310 active optical cables.

49.     The IPtronics Defendants, in their publication "Parallel Optical Interconnects," instruct how to couple the VCSEL driver and transimpedance and limiting amplifier products identified above in paragraphs 46 and 47 with an optical coupling medium and with VCSELs to

7

4817-8712-16941

provide an optical communication network, such as the active optical cable products sold by the Mellanox Defendants.

50.     The IPtronics Defendants, in their publication "Reference Design," also instruct how to couple the VCSEL driver and transimpedance and limiting amplifier products identified above in paragraphs 46 and 47 with an optical coupling medium and with VCSELs to provide an optical communication network, such as the active optical cable products sold by the Mellanox Defendants.

51.     Plaintiffs are informed and believe and, on that basis, allege that the VCSEL arrays in the IPtronics Defendants' "Reference Design" publication operate in multiple transverse modes, at least when used as instructed by the IPtronics Defendants.

52.     Plaintiffs are informed and believe and, on that basis, allege that the VCSELs in the Mellanox Defendants active optical cable products operate in multiple transverse modes.

53.     An optical communication network as described above, such as the active optical cable products sold by the Mellanox Defendants literally infringes at least one or more claims of the '447 patent if the VCSEL aperture has a diameter of at least 8 microns.

54.     An optical communication network as described above, such as the active optical cable products sold by the Mellanox Defendants infringes one or more claims of the '447 patent under the doctrine of equivalents if the VCSEL aperture has a diameter of 8 microns or less.

55.     The IPtronics Defendants do not advertise or otherwise promote their products identified in paragraphs 46 and 47 above for any use other than in an optical communication network covered by one or more claims of the '447 patent.

56.     There is no substantial known use for the IPtronics Defendants' products identified in paragraphs 46 and 47 above other than in an optical communication network covered by one or more claims of the '447 patent.

57.     Plaintiffs are informed and believe and, on that basis, allege that customers and/or end users of the IPtronics Defendants' products identified in paragraphs 46 and 47 above, including by way of example and not by way of limitation the Mellanox Defendants, directly infringe at least the aforementioned claim(s) of the '447 patent.

4817-8712-16941

**PLAINTIFFS' U.S. PATENT NO. 6,947,456**

58.     United States Letter Patent No. 6,947,456, entitled "Open-Loop Laser Driver having an Integrated Digital Controller," duly and legally issued on September 20, 2005.  A true and correct copy of U.S. Patent No. 6,947,456 is attached hereto as Exhibit 3.  Following a reexamination of U.S. Patent No. 6,947,456, the United States Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate (8966th), Number US 6,947,456 C1, on April 17, 2012, confirming the validity of all 20 original claims and allowing 4 additional claims.  A true and correct copy of *Ex Parte* Reexamination Certificate (8966th) Number US 6,947,456 C1 is attached hereto as Exhibit 4.  U.S. Patent No. 6,947,456, together with *Ex Parte* Reexamination Certificate (8966th) Number 6,947,456 C1, shall hereinafter be referred to as the "'456 patent."

59.     Plaintiff Avago General IP is the owner by assignment of all rights, title and interest in the '456 patent, including the right to sue and recover for past infringement.

60.     Plaintiffs Avago Trading, Avago Sales, and Avago US received their rights to the '456 patent on May 26, 2011 through a series of inter-company licenses.

61.     Plaintiff Avago Trading is the exclusive licensee in the U.S., as per a licensing agreement with Avago General IP, with rights to reproduce, perform, display, transmit, distribute, use, make, have made, import, offer to sell, sell and otherwise market any and all products incorporating the '456 patent.

62.     Plaintiff Avago Sales is the exclusive worldwide distributor, as per a limited risk distributorship agreement with Avago Trading, with the right to advertise, promote, instruct customers, implement marketing, distribute and sell any and all products incorporating the '456 patent.

63.     Plaintiff Avago US is the exclusive U.S. distributor, as per a limited risk distributorship agreement with Avago Sales, with the right to advertise, promote, instruct customers, implement marketing, distribute and sell any and all products incorporating the '456 patent.

4817-8712-16941

64.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants had knowledge of the '456 patent prior to the filing of this civil action.   In the alternative, the filing of this civil action constituted notice of Plaintiffs' patent rights.

65.     Plaintiffs are informed and believe and, on that basis, allege that a laser array using one or more of the IPtronics Defendants' VCSEL driver products described above literally infringes one or more claims of the '456 patent, including when operated at bit rates above 5 Gb/s.

66.     Plaintiffs are informed and believe and, on that basis, allege that, within the six years preceding the filing of the original Complaint in this action (D.I. 1), and continuing from the filing of the original Complaint to the present time, the IPtronics Defendants advertised for sale, offered for sale, imported and/or sold within the United States various VCSEL driver circuits for an array of VCSELs including, by way of example and not by way of limitation to two infringing products, the IPVD12G011 and IPVD3x4 VCSEL drivers, each of which is for use with an array of VCSELs.

67.     Plaintiffs are informed and believe and, on that basis, allege that, the Mellanox Defendants advertised for sale, offered for sale, imported and/or sold within the United States active optical cable products, at least some of which include the VCSEL drivers described in paragraph 64 above and sold by the IPtronics Defendants.   These active optical cable products include, by way of example and not by way of limitation as to infringing products, MC2207310, MC2210310, and MC2206310 active optical cables.

68.     A "bit rate" is the speed at which data is transmitted and, with respect to at least Defendants' products identified above, may be from about 5 to about 56 Gb/s and beyond.

69.     Plaintiffs are informed and believe and, on that basis, allege that at least the IPtronics Defendants' VCSEL driver circuits referred to above infringe one or more claims of the '456 patent, including when operated at bit rates above 5 Gb/s and when used with an array of VCSELs, as instructed by the IPtronics Defendants' "Reference Design" publication referred to above in paragraph 39, literally or under the doctrine of equivalents.

70.     The IPtronics Defendants, in their publications referred to herein above, instruct how to connect and use the IPtronics Defendants' VCSEL driver circuits with VCSEL arrays.

71.     The IPtronics Defendants do not advertise or otherwise promote their products identified above for any use other than with an array of VCSELs.

72.     There is no substantial known use for the IPtronics Defendants' products, including those identified above, other than with an array of VCSELs.

73.     Plaintiffs are informed and believe and, on that basis, allege that customers and/or end users of the IPtronics Defendants' products identified above, including but not limited to the Mellanox Defendants, infringe one or more claims of the '456 patent, literally or under the doctrine of equivalents.

74.     Plaintiffs are informed and believe and, on that basis, allege that at least the Mellanox Defendants' active optical cable products referred to in paragraph 67 above infringe one or more claims of the '456 patent, literally or under the doctrine of equivalents.

## THE IPTRONICS DEFENDANTS' FALSE OR MISLEADING MARKETING AND ADVERTISING

75.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants made false or misleading representations to ███████████████████ regarding the allegedly ███████████████████████████████ ████████.

76.     On or about October 12, 2007, the IPtronics Defendants made representations published in an article entitled "IPtronics Goes Green" on the "Tornado Insider" Website.  The article states that "IPtronics low power 4 channel VCSEL Driver and TransImpedance amplifier features the lowest power in the industry for next generation optical parallel transmission modules and active cables…., dissipating less than 8mW/Gbps (for a transceiver solution), running at up to 12.5 Gbps/channel."

77.     ████████████████████████ ████████████████ ████████████████████████████████ ████████████████████████████████████

4817-8712-16941



78.    Content identical to the "IPtronics Goes Green" article was also published on or about October 12, 2007, under a different article titled "IPtronics Adds TIA," on LightReading, a website for "Networking the Telecom Community."

79.    On information and belief, the IPtronics Defendants continued to represent their chipsets as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. For example,

80.    On January 1, 2008, the IPtronics Defendants posted the "IPtronics Goes Green" article as a press release on their website.

81.    On or about April 28, 2008, the website LIGHTWAVE published an article entitled "IPtronics samples 12x10G silicon," stating that "IPtronics' 12-channel VCSEL driver and transimpedance amplifier feature[d] "the lowest power in the industry for next-generation optical parallel transmission modules and active cables, the company assert[ed]."

82.



83.    ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.    On August 27, 2008, the website of LIGHTWAVE published an article entitled "IPtronics unveils VCSEL chipset," stating that the IPtronics Defendants claimed their 4-channel VCSEL driver and transimpedance amplifier had

1  "the lowest power in the industry for next-generation optical parallel transmission modules and

2  active cables."

3      84.

7      85.     On information and belief, beginning in or about

20      86.

26

27      87.     In or about December 2009, Defendants knowingly and deliberately

4817-8712-16941



88.     In or about December 2009, the IPtronics Defendants also knowingly and deliberately

89.     On information and belief, the IPtronics Defendants knowingly and deliberately

90.     In addition to

the IPtronics Defendants had knowledge and were aware that

For example, the IPtronics Defendants described

but  described

The IPtronics Defendants had knowledge and were aware that

14

Nonetheless, the IPtronics Defendants did not

.

91.    Similarly, the IPtronics Defendants had knowledge and were aware that

.   For example, the IPtronics Defendants described

but described

The IPtronics Defendants had knowledge and were aware that

.   Nonetheless, the IPtronics Defendants did not

.

92.    The IPtronics Defendants' "Reference Design" publication, first published in May 2009, instructs that bias currents be set between 5 mA to 9 mA, that modulation currents be set between 4.3 mA and 7 mA, that temperature compensation coefficients be set based on temperature, and that "pre-emphasis" should be set between 4 and 7.

93.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants knew, or in the exercise of reasonable care should have known, that their descriptions and/or representations to                    relating to the                    were false or misleading because

.

4817-8712-16941

94.     Plaintiffs are informed and believe and, on that basis, allege that Defendants knew, or in the exercise of reasonable care should have known, that Defendants' descriptions and/or representations to ███████████████████████ relating to the allegedly ██████ ████████████████████████████████████████ were false or misleading because the IPtronics Defendants' ████████████████████████████████ ████████ ████████████████ █████████████████████████████ ████████████████████.

95.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants disseminated descriptions and/or representations to ███████████████████ relating to ████████████████████████████████████████████ ██████████████████████████████████████, which are false or misleading because the IPtronics Defendants ██████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████.

96.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants knew, or in the exercise of reasonable care should have known, that their descriptions and/or representations relating to ████████████████████████████████ ████████████████████████████████████████ ██████ were false or misleading because ██████████ ████████████ ████████████████████████████████████████████████ ███████████████████████.

97.     The IPtronics Defendants, in connection with the accused products, use false or misleading description of fact or false or misleading representation of fact when the IPtronics Defendants declare on their publicly available website that such products have low power consumption or dissipation.  In a January 1, 2008, publication, entitled "IPtronics Goes Green," on the "Latest News" section of their website, the IPtronics Defendants use a false or misleading

16

description of their products with respect to power consumption or dissipation.  For example, the IPtronics Defendants make the following statements in their January 1, 2008, website publication:  (a) "IPtronics low power 4 channel VCSEL Driver and TransImpedance amplifier features the lowest power in the industry for next generation optical parallel transmission modules and active cables."; (b) "IPtronics silicon already enable module manufacturers in Japan, US and Europe to offer solutions dissipating less than 8mW/Gbps (for a transceiver solution), running at up to 12.5 Gbps/channel."; (c) "The chip set from IPtronics will enable module manufactures to compete with existing solutions on mainly power dissipation, but also parameters such as cost, weight, EMI ao."; (d) "Compared to copper links system manufacturers will experience power savings of a factor of 10.  Compared to existing optical links, system manufacturers can expect 4 to 5 times lower power than modules currently available in the market place."

98.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants knew, or in the exercise of reasonable care should have known, that their descriptions and/or representations on their publicly available website relating to the performance and power consumption of their products were false or misleading because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

99.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' false or misleading representations of fact are material and have influenced consumers' purchasing decisions.

100.    As a direct result of the IPtronics Defendants' false or misleading ▮▮▮▮▮ advertising, Avago ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

101.    Deceived and misled by the IPtronics Defendants' false or misleading marketing and   advertising, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

1  

2  

3      102.

4  

5  

6  

7      103.    To mitigate harm to Avago from the IPtronics Defendants false or misleading

8 representations about

9 , Avago was forced to

10  

11  

12  

13  

14      104.    As a direct result of the IPtronics Defendants' false or misleading

15 marketing and advertising, Avago suffered

16  

17  

18      105.    The IPtronics Defendants also benefitted from false or misleading

19 marketing and advertising by making sales based on these false or misleading

20 representations.

21      106.    As a direct result of the IPtronics Defendants' false or misleading

22 marketing and advertising, the IPtronics Defendants enabled

23  

24      107.    As a direct result of the IPtronics Defendants' false or misleading

25 marketing and advertising, the IPtronics Defendants benefitted from increased sales

26 of their products, and in their industry standing.

27      108.    As a direct result of the IPtronics Defendants' false or misleading

28 marketing and advertising, the IPtronics Defendants made themselves an attractive

18

acquisition target to Avago's competitors, including Mellanox Technologies Ltd., which completed its acquisition of the IPtronics Defendants in July 2013.

109. As a direct and proximate cause of the actions of the IPtronics Defendants, Plaintiffs have been damaged in their competition with the IPtronics Defendants.

110. The IPtronics Defendants' continued use of false or misleading descriptions of fact or false or misleading representations of fact poses a grave risk of irreparable injury to Plaintiffs because such injury, including monetary damages and loss of good will, are difficult, if not impossible, to calculate, and the IPtronics Defendants' wrongful acts should be enjoined by this Court.

## MISAPPROPRIATION OF PLAINTIFFS' TRADE SECRETS

111. Plaintiffs' intellectual property also includes numerous trade secrets and proprietary and confidential information relating but not limited to (a) Avago employees; (b) business strategies, including marketing plans, forecasts and customer lists, contacts and purchasing information; (c) technology research and development and introduction plans; (d) process yields, manufacturing strategies, and costs; (e) supplier and distributor information; (f) company training programs and operating policies; (g) patent applications and disclosures and privileged legal information; (h) third-party confidential information; and (i) Plaintiffs' competition.

112. Pursuant to California Civil Procedure Code § 2019(d) and Civil Code §§ 3426, *et. seq.*, Plaintiffs have designated the trade secret information they allege have been misappropriated by the IPtronics Defendants in Plaintiffs' Trade Secret Designation Pursuant to California Civil Procedure Code 2019(d) ("Plaintiffs' Trade Secret Designation"). A true and correct copy of Plaintiffs' Trade Secret Designation is attached hereto as Exhibit 5.

113. Plaintiffs share certain intellectual property rights, which include, but are not limited to, trade secret rights and all other rights in or to confidential business or technical information. Specific details of these agreements are confidential.

114. Plaintiffs' trade secrets have economic value because they are the result of extensive expenditures of Plaintiffs' time, effort and money, are not generally known to the

19

4817-8712-16941

public or to other persons who can obtain economic value from its disclosure or use, and provide Plaintiffs with a competitive advantage over their competitors, including the IPtronics Defendants.

115.    Plaintiffs' trade secrets have all been the subject of reasonable efforts to maintain the secrecy of such information.  Such efforts have included confidentiality obligations in employment agreements and in the applicable inter-company agreements.

116.    Between June 2006 and September 2009, Fariba Danesh ("Danesh") was employed by Avago as the Senior Vice President and General Manager – Fiber Optics Product Division ("FOPD"), an executive position that reports directly to the Chief Executive Officer of Avago Technologies Ltd., Plaintiffs' parent company.

117.    As a condition of her employment with Avago, Danesh signed a confidentiality agreement, the provisions of which would ███████████████████████████████████ ████████████████.  This confidentiality agreement provided that, ████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████ █████████████████████████████████████████████████.

118.    As an Avago employee, Danesh both acquired and generated proprietary information, including trade secret information, about all phases of Avago's business, including but not limited to privileged legal information, marketing, technical know-how, business plans, and competitor and customer information that was not publicly available.

119.    In particular, Danesh, as the Senior Vice President and General Manager of Avago's FOPD, acquired Avago FOPD's cost structure related to ████████████ ███████ ████████████████████████████████████████████.

120.    Determination of sensible product cost structure is generally highly dependent on other confidential information such as ████████████████████████████████████ █████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████.

20

4817-8712-16941

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ██████████████████████████"

5     121.    Danesh regularly used the cost structure information she acquired in her role as

6 Senior Vice President and General Manager of Avago's FOPD to evaluate ███████████

7 ██████████████ ████████ █████████████████████████████

8 ███████████████████████████████████████████████

9 ████.

10     122.    Specifically, Danesh regularly used Avago's confidential cost structure to

11 evaluate ██████████████████████████████████████████

12 █████████████ █████████████████████████████████

13 ████████████████████████████████████ ██████████

14 ████████████████████████.

15     123.    In her role as Senior Vice President and General Manager of Avago's FOPD,

16 Danesh acquired knowledge of ███████████████████████████████

17 ████████████████████████.

18     124.    From January 2007 to June 2009, Danesh, used Avago's confidential cost

19 structure to ███████████████ █████████████████.

20     125.    Knowledge of Avago's confidential cost structure information provided a

21 tremendous business advantage to Defendants ████████████████████

22 ████████████████████.

23     126.    Knowledge of Avago's cost structure information is critical for maintaining the

24 competitiveness of Avago's product ████████████████████.

25     127.    In addition, Danesh, as the Senior Vice President and General Manager of

26 Avago's FOPD, acquired information ██████████████████████████

27 ██████████████. Danesh regularly used Avago's confidential

28 ███████████████████████████████████████████████

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

4817-8712-16941

128.    At all times during her Avago employment,  Danesh was made fully aware of the trade secret nature of that information and her duty to maintain the secrecy of that information.

129.    In particular, confidentiality of Avago's cost structure information is critical for maintaining the competitiveness of Avago's product, as Danesh readily acknowledged in an email to

130.    At all times during her Avago employment, Danesh and Avago had an understanding that the trade secret and confidential nature of this information would not only be maintained but also that such information would not be used or disclosed by Danesh outside of Avago without Avago's consent.

131.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants

, to gain access to Avago trade secret and other confidential information to use in developing the strategy and execution plans for the IPtronics Defendants' competing products.

132.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants

.

133.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants

to breach her duty to maintain the secrecy of Avago's trade secrets.

134.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants

4817-8712-16941

1    ███████████████, including sensitive business, technical, and privileged legal

2    information.

3        135.    On ████████████████████████████

4    ████████████████████████

5        136.    Immediately after █████████████████████████

6    █████████████████████████████████████

7    ██████████████████████████████████████

8    █████████████████████████.

9        ███████████████████████████

10   █████████████████████████

11   ████████████████████████████

12   ████████████████████████████

13   ████████████████████████████

14   ███████████████████████████

15   █████████████████████████.

16       137.    ████████████████████████████

17   ████████████████████████████

18   ████████████████████████████

19   ████████████████████████████

20   ████████████████████

21       138.    On information and belief, the IPtronics Defendants ████████

22   ████████████████████████████

23   ██████████.

24       139.    On information and belief, the IPtronics Defendants ████████

25   ████████████████████████████

26   ████████████████████████████

27   █████████████.

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

4817-8712-16941



140.    In or around November 2010, ████████████████████████

████████████████████████████████████████████. On information and belief, ███████████████████████████████████

████████████████████████████████████████████████████

██████████ ████████████ ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

141.  ██████████████████████████ ████████████

142.  ████████████████████ ████████████████ ██

████████████████████████████████████████████████████

██████████████ ████████████████████████ ████████

████████████████████████████████████████████████████

████████████████████████

143.    On information and belief, the IPtronics ████████

████████████████████████████████████ ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ ██████████████.

144.    In  December  2010, ████████████████████████

████████████████████████. On information and belief,  Defendants ████

████████████████████████████.

145.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants were fully aware of the trade secret nature of the Avago information that Danesh generated, conveyed to, and/or used at Avago before ████████████████████

██████████.

146.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants were fully aware that Danesh's acquisition of Avago trade secret information was

1   either done improperly or, if done properly, under circumstances that gave rise to a duty of

2   Danesh to Avago to maintain the secrecy of such information.

3         147.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

4   Defendants have used and may still be using Avago trade secrets and other confidential

5   information ███████████, who acquired such information improperly or, if done properly, under

6   circumstances that gave rise to a duty of ██████ to Avago to maintain the secrecy of such

7   information.

8         148.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

9   Defendants, before allowing ████████████████████████████████████

10  ████████████████, had an opportunity to ███████████████, but knowingly and

11  intentionally encouraged ██████ that information for the IPtronics Defendants' commercial

12  gain.

13        149.   As a direct and proximate cause of the actions of the IPtronics Defendants,

14  Plaintiffs have been damaged in their competition with the IPtronics Defendants.

15        150.   As a direct and proximate cause of the misappropriation by the IPtronics

16  Defendants, the IPtronics Defendants were unjustly enriched.  Plaintiffs are entitled to recover

17  from the IPtronics Defendants the amount of such unjust enrichment caused by the

18  misappropriation in addition to Plaintiff's damages.

19        151.   The misappropriation of Plaintiffs' trade secrets poses a grave risk of irreparable

20  injury to Plaintiffs because such injury, including monetary damages and loss of good will, are

21  difficult, if not impossible, to calculate, and the IPtronics Defendants' wrongful acts should be

22  enjoined by this Court.

23        **COUNT ONE:  INFRINGEMENT OF U.S. PATENT NO. 5,359,447**

24        152.   Plaintiffs incorporate by reference Paragraphs 1 through 151 as if fully set forth

25  herein.

26        153.   By virtue of its ownership of the '447 Patent, Plaintiff Avago General IP has the

27  right to sue thereon and the right to recover for infringement thereof.

28

154.    By virtue of their exclusive licenses, Plaintiffs Avago Trading, Avago Sales, and Avago US have the right to sue for infringement of the '447 Patent and the right to recover for infringement thereof.

155.    Plaintiffs are informed and believe and, on that basis, allege that the Mellanox Defendants have, individually or in concert with others, directly infringed one or more claims of the '447 patent by advertising for sale, offering for sale, importing and/or selling within the United States the accused active optical cable products.

156.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants contribute to infringement of one or more claims of the '447 patent by selling, offering to sell, and/or importing within the United States the accused VCSEL driver and transimpedance and limiting amplifier products which have no substantial, noninfringing use, with knowledge of the '447 patent and with knowledge that its customers' use of the accused products may infringe the '447 patent.

157.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' activities constitutes active inducement of infringement of one or more claims of the '447 patent where Defendants instruct their customers how to infringe the '447 patent and encouraging its customers' infringement of the '447 patent with knowledge of Plaintiffs' patent and with the intent to cause such infringement.

158.    Plaintiffs are informed and believe and, on that basis, allege that Defendants' infringement of the '447 patent has been willful.

159.    The activities of Defendants as complained of in this Count One have injured and been to the detriment of Plaintiffs and, as a result thereof, Plaintiffs are entitled to recover damages adequate to compensate them for the infringement complained of herein, including lost profits, but in no event less than a reasonable royalty.

160.    The activities of Defendants as complained of in this Count One have caused Plaintiffs substantial damage and irreparable injury by virtue of their past infringement.

## **COUNT TWO:  INFRINGEMENT OF U.S. PATENT NO. 6,947,456**

4817-8712-16941

161.     Plaintiffs incorporate by reference Paragraphs 1 through 160 as if fully set forth herein.

162.     By virtue of its ownership of the '456 Patent, Plaintiff Avago General IP has the right to sue thereon and the right to recover for infringement thereof.

163.     By virtue of their exclusive licenses, Plaintiffs Avago Trading, Avago Sales, and Avago US have the right to sue for infringement of the '456 Patent and the right to recover for infringement thereof.

164.     Plaintiffs are informed and believe and, on that basis, allege that within the six years preceding the filing of the original Complaint in this action (D.I. 1) and continuing from the filing of the original Complaint to the present time, the IPtronics Defendants have, individually or in concert with others, directly infringed one or more claims of the '456 patent by advertising for sale, offering for sale, importing and/or selling within the United States the accused VCSEL driver products.

165.     Plaintiffs are informed and believe and, on that basis, allege that the Mellanox Defendants have, individually or in concert with others, directly infringed one or more claims of the '456 patent by advertising for sale, offering for sale, importing and/or selling within the United States the accused active optical cable products.

166.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' activities as complained of in this Count Two constitutes active inducement of infringement of one or more claims of the '456 patent where Defendants instruct their customers how to infringe the '456 patent and encouraging its customers' infringement of the '456 patent with knowledge of Plaintiffs' patent and with the intent to cause such infringement.

167.     The activities of Defendants as complained of in this Count Two have been to the injury and detriment of Plaintiffs and as a result thereof, Plaintiffs are entitled to recover damages adequate to compensate them for the infringement complained of herein, including lost profits, but in no event less than a reasonable royalty.

168.     The activities of Defendants as complained of in this Count Two have caused and will continue to cause Plaintiffs substantial damage and irreparable injury by virtue of their past

27

4817-8712-16941

1  and continuing infringement, and Defendants will continue to infringe the '456 patent, causing

2  Plaintiffs to suffer further damage and irreparable injury unless and until Defendants are

3  enjoined by this Court.

4  <u>**COUNT THREE:  VIOLATION OF § 43(A) OF THE LANHAM ACT**</u>

5  169.   Plaintiffs incorporate by reference Paragraphs 1 through 168 as if fully set forth

6  herein.

7  170.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

8  Defendants have used and may still be using false or misleading descriptions of fact or false or

9  misleading representations of fact.  These false or misleading statements have been made in

10  connection with the IPtronics Defendants' statements to ███████████████████████

11  relating to the allegedly ████████████████ ████████████████████████

12  ██████████████.

13  171.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

14  Defendants have used and still may be using false or misleading descriptions of fact or false or

15  misleading representations of fact.  These false or misleading statements have been made in

16  connection with the IPtronics Defendants' statements to ███████████████████████

17  relating to  ████████████████████████████████████████████

18  ████████████████████████████████████████████████.

19  172.   In connection with the accused products, the IPtronics Defendants have used and

20  are using false or misleading descriptions of fact or false or misleading representations of fact.

21  These false or misleading statements have been made in connection with the IPtronics

22  Defendants' statements on their publicly available website, publications, and sales pitches that

23  their products have low power consumption or dissipation.

24  173.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

25  Defendants' false or misleading representations of fact are material and have influenced

26  consumers' purchasing decisions.

27

28

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

4817-8712-16941

174.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants made such false or misleading descriptions of fact or false or misleading representations of fact in interstate commerce in connection with the accused products.

175.   As a direct and proximate cause of the actions of the IPtronics Defendants, Plaintiffs have been damaged in their competition, including the IPtronics Defendants' profits, money damages sustained by Plaintiffs, and the costs of this Action, in amounts yet undetermined.

176.   The IPtronics Defendants' continued use of false or misleading descriptions of fact or false or misleading representations of fact poses a grave risk of irreparable injury to Plaintiffs because such injury, including monetary damages and loss of good will, are difficult, if not impossible, to calculate, and the IPtronics Defendants' wrongful acts should be enjoined by this Court and/or the Court should order the IPtronics Defendants to disseminate corrective advertising.

### COUNT FOUR:  VIOLATION OF CALIFORNIA'S UNIFORM TRADE SECRETS ACT, CIVIL CODE § 3426 *ET SEQ.*

177.   Plaintiffs incorporate by reference Paragraphs 1 through 176 as if fully set forth herein.

178.   Plaintiffs' proprietary information ███████████████████████ ██████ amounts to protectable trade secrets of Plaintiffs in that Plaintiffs:   (a) derive independent economic value, actual or potential, from not having the information generally known to the public or to other persons who can obtain economic value from the information's disclosure or use; and (b) have made reasonable efforts to maintain their secrecy.

179.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants ████████████████████████████████ █████████████████████████, including sensitive business, technical, and privileged legal information.

180.   Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants were fully aware of the trade secret nature of the Avago information that Danesh

29

generated, conveyed to and/or used at Avago ████████████████████████

████████ .

181.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants were fully aware that Danesh's acquisition of Avago trade secret information was either done improperly or, if done properly, under circumstances that gave rise to a duty of Danesh to Avago to maintain the secrecy of such information.

182.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants have used and may still be using Avago trade secrets and other confidential information ████████, who acquired such information improperly or, if done properly, under circumstances that gave rise to a duty of ██████ to Avago to maintain the secrecy of such information.

183.    Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants, before allowing ████████████████████████ ████████████, had an opportunity to stop ████████████, but instead knowingly and intentionally encouraged ██████████ that information for the IPtronics Defendants' commercial gain.

184.    As a direct and proximate cause of the actions of the IPtronics Defendants, Plaintiffs have been damaged in an amount as yet undetermined.  In addition, the IPtronics Defendants have been unjustly enriched as a result of their misappropriation of Plaintiffs' trade secrets.

185.    In connection with their actions hereinabove alleged, the IPtronics Defendants have acted with fraud, malice or oppression, and, by reason thereof, Plaintiffs are entitled to exemplary and punitive damages against each of them in a total amount to be determined at trial.

186.    The misappropriation of Plaintiffs' trade secrets poses a grave risk of irreparable injury to Plaintiffs because such injury, including monetary damages and loss of good will, are difficult, if not impossible, to calculate, and the IPtronics Defendants' wrongful acts should be enjoined by this Court.

## COUNT FIVE:  VIOLATION OF CALIFORNIA BUSINESS

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

4817-8712-16941

**AND PROFESSIONS CODE § 17200 *ET SEQ.***

187.     Plaintiffs incorporate by reference Paragraphs 1 through 186 as if fully set forth herein.

188.     At all times herein relevant, the IPtronics Defendants have engaged in a pattern of unlawful, unfair, or fraudulent business acts or practices relative to Plaintiffs that have not only significantly threatened or harmed competition, but that also have resulted in the IPtronics Defendants competing unfairly with Plaintiffs.

189.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' unlawful, unfair, or fraudulent business acts or practices have included, but have not been limited to, ████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ and then using such information to compete unfairly with Plaintiffs.

190.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' unlawful, unfair, fraudulent business or practices have also included, but have not been limited to, disseminating false or misleading descriptions and/or representations to ████████████████████████ relating to the allegedly ██████████ ████████████████████████████████.

191.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants knew, or in the exercise of reasonable care should have known, that their descriptions and/or representations relating to the allegedly ████████████████ ████████████████████ were false or misleading.

192.     Plaintiffs are informed and believe and, on that basis, allege that the IPtronics Defendants' unlawful, unfair, fraudulent business practices or acts have also included, but have not been limited to, disseminating false or misleading descriptions and/or representations to ████████████████████ relating to ████████████ ████████████████████████████████████████████ ██████████████. Additionally or alternatively, Plaintiffs are informed and believe, and on

31

4817-8712-16941

1  that basis allege, that the IPtronics Defendants' marketing or advertising representation regarding

2  the ██████████████████████████████████████████████████████

3  ████████ constitute unfair, deceptive, untrue or misleading advertising within the meaning of

4  California Business and Professions Code §§ 17200 and 17500.

5       193.  Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

6  Defendants knew, or in the exercise of reasonable care should have known, that their

7  descriptions and/or representations relating to ████████████████████████████

8  ███████████████████████████████████████████████████████████

9  ████████████████████ were false or misleading.

10       194.  Plaintiffs are informed and believe and, on that basis, allege that the IPtronics

11  Defendants have used and may still be using false or misleading descriptions of fact or false or

12  misleading representations of fact in connection with their descriptions and/or representations to

13  ██████████████████████████ relating to ████████████████████████████

14  ████████████████████████████████████████

15       195.  Plaintiffs are informed and believe and, on that basis, allege that all of the

16  foregoing unlawful, unfair or fraudulent business practices or acts of the IPtronics Defendants

17  were an intentional effort to gain an unfair competitive advantage.

18       196.  As a result of the IPtronics Defendants' unfair competition or false advertising,

19  Plaintiffs have suffered injury in fact and lost money or property.

20       197.  Plaintiff seek to have the IPtronics Defendants enjoined by this Court from the

21  use or employment  of any practice which constitutes unfair competition or false advertising

22  within the meaning of California Business and Professions Code §§17200 and 17500

23  **COUNT SIX:  INTENTIONAL INTERFERENCE WITH PROSPECTIVE**
24  **ECONOMIC ADVANTAGE**

25       198.  Plaintiffs incorporate by reference Paragraphs 1 through 197 as if fully set forth

26  herein.

27       199.  Plaintiffs had numerous third-party existing business relationships, including, but

28  not limited to, ██████████████████████████████████████████.

200.    Plaintiffs also had many other prospective business relationships.

201.    There was a probability of future economic benefit from these business relationships, demonstrated by, among other things, ███████████████ ██████████████████████████████████████████████ ████████████████ .

202.    ██████████████████████ ████████████████████ ███████ .

203.    The IPtronics Defendants have benefitted and continue to benefit from the disruption they intended to cause and caused to Plaintiffs' existing business relationships with customers and potential customers because ████████████████ ████████████████ .

204.    The IPtronics Defendants stated that ████████████████ ████████████████████████████████████ .

205.    The IPtronics Defendants intentionally and deliberately interfered with Plaintiffs' existing and prospective business relationship in multiple wrongful ways.

206.    The IPtronics Defendants wrongfully interfered with Plaintiff's business relationships with existing customers and potential customers by ████████████ ████████████████████████████████████████████ ████████████████ .

207.    The IPtronics Defendants wrongfully interfered with Plaintiff's business relationships with existing customer and potential customers by ████████████ ████████████████████████████████████████████ ███████████████████████████ .

208.    The IPtronics Defendants' false or misleading representations misled or deceived Plaintiffs' existing and potential customers ████████████████ ████████ .

209.    The IPtronics Defendants' false or misleading representations damaged Plaintiffs business reputation and goodwill from existing and potential customers.

33

210.   The IPtronics Defendants' false or misleading representations ███████

████████████████████████████████████████████.

211.   The IPtronics Defendants further wrongfully interfered with Plaintiff's business

relationships with existing customer and potential customers by ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████.

212.   The IPtronics Defendants knew of and intended to wrongfully interfere with

Plaintiffs' prospective economic advantage for the IPtronics Defendants' own advantage, and the

wrongful interference with these prospective economic relationships was actually and

proximately caused as a result.   The IPtronics Defendants knew such wrongful interference was

substantially certain to result.

213.   As a direct and proximate result of the wrongful conduct of the IPtronics

Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

214.   As a direct and proximate result of the wrongful conduct of the IPtronics

Defendants, Plaintiffs have suffered and continue to suffer money damages in an amount to be

proved at trial.

215.   In addition, the IPtronics Defendants profited from their wrongful conduct.

Plaintiffs seek to have the IPtronics Defendants disgorge all profits directly and proximately

resulting from the IPtronics Defendants' wrongful conduct as set forth herein.

## COUNT SEVEN:  UNJUST ENRICHMENT

216.   Plaintiffs incorporate by reference Paragraphs 1 through 215 as if fully set forth

herein.

217.   By their wrongful actions, the IPtronics Defendants have received and have

improperly retained a benefit at Plaintiffs' expense.

218.   It is against equity and good conscience to permit the IPtronics Defendants to

retain the benefits derived from their wrongful conduct.   Plaintiffs seek to have the IPtronics

34

Defendants ordered to disgorge all amounts wrongfully obtained as a result of their conduct as set forth herein.

219.    As a direct and proximate result of the wrongful conduct of the IPtronics Defendants, Plaintiffs have suffered and continue to suffer irreparable injury.

220.    As a direct and proximate result of the wrongful conduct of the IPtronics Defendants, Plaintiffs have suffered and continue to suffer money damages.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial of all issues in the above-captioned action which are triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for relief against Defendants as follows:

a.    Judgment that the Mellanox Defendants have directly infringed one or more claims of the '447 patent;

b.    Judgment that the IPtronics Defendants have contributorily infringed one or more claims of the '447 patent;

c.    Judgment that the IPtronics Defendants have actively induced infringement one or more claims of the '447 patent;

d.    Judgment that the IPtronics Defendants have directly infringed one or more claims of the '456 patent;

e.    Judgment that the Mellanox Defendants have directly infringed one or more claims of the '456 patent;

f.    Judgment that the IPtronics Defendants have actively induced infringement of one or more claims of the '456 patent;

g.    Awarding Plaintiffs damages adequate to compensate them for the infringement of the '447 patent, including lost profits, but in no event less than a reasonable royalty for use of the invention together with interest and costs under 35 U.S.C. § 284;

4817-8712-16941

h.      Awarding Plaintiffs damages adequate to compensate them for the infringement of the '456 patent, including lost profits, but in no event less than a reasonable royalty for use of the invention together with interest and costs under 35 U.S.C. § 284;

i.      Awarding up to treble the amount of damages assessed for any patent infringement determined to be willful;

j.      A permanent injunction enjoining Defendants, its officers, agents, servants, employees, representatives, licensees, successors, assigns, and those persons in active concert or participation with any of them, from directly or indirectly infringing the '456 patent;

k.      Judgment that the IPtronics Defendants have used false or misleading descriptions of fact;

l.      Judgment that the IPtronics Defendants have used false or misleading representations of fact;

m.      Ordering Defendants to disseminate corrective advertising;

n.      Judgment that the IPtronics Defendants have misappropriated Plaintiffs' trade secrets;

o.      Judgment that the IPtronics Defendants have intentionally interfered with Plaintiffs' prospective economic advantage.

p.      Awarding Defendants' profits, compensatory damages, and Plaintiffs' attorneys' fees and costs of the action;

q.      Ordering Defendants to disgorge and restore to Plaintiffs the unjust enrichment received by each Defendant by means of its unfair competition with Plaintiffs and by virtue of Defendants' wrongful conduct;

r.      Judgment against the IPtronics Defendants and each of them for exemplary damages under California Civil Code § 3426.3(c) in the amount not less than twice the amount of Plaintiffs' actual damage or the amount by which the IPtronics Defendants have been unjustly enriched; or for punitive damages under California Civil Code §3294 for the IPtronics Defendants fraud, malice or oppression;

4817-8712-16941

s.      A preliminary and permanent injunction enjoining the IPtronics Defendants, their officers, agents, servants, employees, representatives, licensees, successors, assigns, and those persons in active concert or participation with any of them, from using false or misleading descriptions of fact or false or misleading representations of fact, from any and all further acts of unfair competition, and from any and all further wrongful acts which unjustly enriched each of the IPtronics Defendants;

t.      A preliminary and permanent injunction enjoining the IPtronics Defendants, their officers, agents, servants, employees, representatives, licensees, successors, assigns, and those persons in active concert or participation with any of them, from further misappropriation, disclosure and/or use of any Avago trade secret information, or any Avago confidential and proprietary information;

u.      Awarding pre-judgment and post-judgment interest on the damages assessed;

v.      Awarding to Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,

Foley & Lardner LLP

Dated:  December 11, 2014          By:   _/s/John C. Vetter_____
                                              John C. Vetter
                                              Richard S. Florsheim
                                              Shawn E. McDonald
                                              Nancy L. Stagg
                                              Ary Chang
                                              ATTORNEYS FOR PLAINTIFFS AVAGO
                                                    TECHNOLOGIES U.S.. ET AL.

CONFIDENTIAL FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
CASE NO. 5:10-CV-02863-EJD (PSG)

4817-8712-16941