UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| AVAGO TECHNOLOGIES, INC., et al., | Case No. 5:10-cv-02863-EJD |
| Plaintiffs, | **ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION** |
| v. | |
| IPTRONICS INC., et al., | |
| Defendants. | **(Re: Docket No. 546)** |

Four years ago in this case, the court entered a stipulated protective order patterned on the Northern District's Model Protective Order. The order was explicit that any individual who receives highly confidential, attorney's eyes only or source code information may not "be involved in the prosecution of patents or patent applications relating to laser drivers (including but not limited to VCSEL drivers), transimpedance amplifiers, parallel optical interconnects, and optical communication systems (using VCSELs)."[1] Despite this unambiguous bar on prosecution, Plaintiffs Avago Technologies, Inc., et al.'s expert, Dr. Dennis Deppe, prosecuted at least one patent and patent application relating to optical communication systems using VCSELs, parallel optical interconnects and laser drivers (including VCSEL drivers) after receiving confidential

---
[1] Docket No. 77 at 14.

1

Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION
BAR AND REMEDY PROTECTIVE ORDER VIOLATION

information from Defendant IPtronics et al. and third parties. IPtronics now moves to enforce the prosecution bar and remedy the protective order violation. The court GRANTS-IN-PART IPtronics' motion, as explained below.

# I.

In patent cases like this one, stipulated protective orders with limits on patent prosecution are common. One party, or both, recognizes the need to produce sensitive information to the other side, but legitimately fears that the information may find its way into the other's patents and patent applications. A mere ban on such misuse is not enough; apart from the challenge of knowing what is happening in an ex parte proceeding, there is the matter of proof. "There may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise. As aptly stated by the District of Columbia Circuit, 'it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so.'"[2] And so parties regularly agree to a complete ban on prosecution in technical arts similar to those of the patents-in-suit.

This case arises from Defendants' claims for infringement of Avago's patent rights under United States Patent Nos. 5,359,447 and 6,947,456, as well as for false descriptions or representations contrary to the Lanham Act and misappropriation of Avago's trade secrets.[3] Avago retained Deppe as an expert as of the date it filed the original complaint in June 2010.[4] The parties

---

[2] *In re Deutsche Bank Trust Co. Americas*, 605 F3d 1373, 1378 (Fed. Cir. 2010) (quoting *FTC v. Exxon Corp.,* 636 F.2d 1336, 1350 (D.C. Cir. 1980)).

[3] *See* Docket No. 453 at ¶¶ 1-3.

[4] *See* Docket No. 546-2, Ex. 1 at 1.

2
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

stipulated to a protective order, which the court entered in May 2011.[5] The relevant portion of the order states:

> Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" information shall not be involved in the prosecution of patents or patent applications relating to laser drivers (including but not limited to VCSEL drivers), transimpedance amplifiers, parallel optical interconnects, and optical communication systems (using VCSELs), including without limitation the Patents-in-Suit and any patent or application claiming priority to or otherwise related to the Patents-in-Suit, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").  For purposes of this paragraph "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.  To avoid any doubt, "prosecution" as used in this paragraph does not include representing a Party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or inter partes reexamination) nor does it include sharing work product based on information and material obtainable from asserted public prior art.  This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE" information is first received by the affected individual and shall end two (2) years after final termination of this action.[6]

The "relating to" language in this provision is taken from this court's "model protective order for litigation involving patents, highly sensitive information and/or trade secrets."[7] The prosecution bar defines the activity precluded as "including drafting, amending, advising, and affecting the scope or maintenance of patent claims."[8] It also defines the subject matter prohibited: topics "relating to laser drivers (including but not limited to VCSEL drivers), transimpedance amplifiers, parallel optical interconnects, and optical communication systems (using VCSELs)" as well as the precise subject matter of the patents-in-suit.[9] The prosecution bar applies when a

---

[5] *See* Docket Nos. 76, 77.

[6] Docket No. 77 at ¶ 9.

[7] *See* MODEL PROTECTIVE ORDERS, *available at* http://www.cand.uscourts.gov/model-protective-orders (updated August 20, 2014).

[8] Docket No. 77 at ¶ 9.

[9] *Id.*

3
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

person first receives designated confidential information and stays in effect until two years after the final termination of this action.[10]

Roughly one year later, Avago disclosed Deppe as an expert to IPtronics.[11] Consistent with this disclosure, Deppe received information designated by IPTronics and third parties as "Highly Confidential—Attorneys' Eyes Only."[12] But even as he received this information, Deppe was named inventor on and involved in the prosecution of U.S. Patent No. 8,774,246, filed in January 2012, and U.S. Patent Application No. 14/282,547, filed in May 2014—a continuation-in-part of the application that resulted in the issuance of the '246 patent.[13] The '246 patent was omitted from the list of pending applications in Deppe's curriculum vitae filed with the court in April 2012.[14]

Claiming that both the '246 patent and the '547 application refer to optical communication systems using VCSELs, parallel optical interconnects and laser drivers, including VCSEL drivers,[15] IPtronics now seeks an order that (i) Deppe immediately return all designated information he has received in this action and confirm he will make no further use of such information, (ii) Deppe be precluded from testifying in this action and (iii) Avago and its counsel be jointly and severally sanctioned for violation of the stipulated protective order in the form of fees and costs.[16]

---

[10] *See id.*

[11] *See* Docket No. 556, Ex. A.

[12] *See* Docket No. 561 at 1.

[13] *See* Docket No. 546-4, Ex. 3, at ¶ 4.

[14] *See* Docket No. 203-1 at 43-44; Docket No. 546-2, Ex. 1 at 46-47.

[15] *See, e.g.*, Docket No. 555 at 8; *see also* Docket No. 546-10, Ex. 9 at 4:16-5:11; 7:25-8:3; Docket No. 546-3, Ex. 2 at 3:33-45, 5:10-11, 9:8-37; Docket No. 546-4, Ex. 3 at ¶¶ 0029, 0052-53, 0090.

[16] *See* Docket No. 546 at 1.

**II.**

The court has jurisdiction under 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367(a). The matter was referred to the undersigned pursuant to Fed. R. Civ. P. 72(a).

Remedies such as "[p]reclusive sanctions are within the court's discretion."[17] Magistrate judges may issue monetary and other non-dispositive sanctions.[18]

**III.**

Fed. R. Civ. P. 37(b)(2)(A) authorizes remedies for violations of protective orders.[19] These remedies include "prohibiting the disobedient party from . . . introducing designated matters in evidence."[20] Violation of a prosecution bar also may require a return of any confidential information and a limitation on testimony.[21] In addition, "the court must order the disobedient

---

[17] *See Apple Inc. v. Samsung Electronics Co.*, Case No. 5:11-cv-1846-LHK, 2012 WL 1595784, at *3 (N.D. Cal. May 4, 2012); (citing *Navellier v. Sletten*, 262 F.3d 923, 947 (9th Cir. 2001)) ("Sanctions may be warranted under Federal Rule of Civil Procedure 37(b)(2) for failure to obey a discovery order as long as the established issue bears a reasonable relationship to the subject of the discovery.").

[18] *See Apple Inc. v. Samsung Electronics Co.*, 888 F. Supp. 2d, 976, 985-86 (N.D. Cal. 2012) (citing *Herson v. City of Richmond,* Case No. 4:09-cv-02516-PJH, 2011 WL 3516162, at *2 (N.D. Cal. Aug. 11, 2011); *Io Grp. Inc. v. GLBT Ltd.,* Case No. 3:10-cv-1282-MMC, 2011 WL 4974337 (N.D. Cal. Oct. 19, 2011); *Dong Ah Tire & Rubber Co., Ltd. v. Glasforms, Inc.,* Case No. 5:06-cv-3359-JF, 2009 U.S. Dis. LEXIS 62668 (N.D. Cal. July 2, 2009); *see also Keithley v. Homestore.com, Inc.*, Case No. 3:03-cv-04447-SI, 2008 WL 4830752 (N.D. Cal. Nov. 6, 2008); *Maisonville v. F2 America, Inc.,* 902 F.2d 746, 747-48 (9th Cir. 1990) (finding monetary sanction imposed pursuant to Rule 11 are non-dispositive); *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991) (holding monetary sanctions imposed under Rule 37 are non-dispositive). *See also Apple*, 888 F. Supp. 2d at 988-89; *See MOSAID Techs. Inc. v. Samsung Elecs. Co.*, Case No. A01-cv-4340-WJM, 2004 WL 2550309, at *2 (D.N.J. Oct. 1, 2004) ("Courts have recognized that even if a magistrate judge's order has the potential to materially affect the outcome of an issue, the order should still be reviewed under the more deferential standard.").

[19] *See, e.g.*, *Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983); *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 911 (9th Cir. 1986).

[20] Fed. R. Civ. P. 37(b)(2)(A)(ii).

[21] The justification for imposing a bar on further access to confidential information is based on the prejudice caused by the conduct, not just the conduct itself. *See* Fed. R. Civ. P. 37(b)(2); *See, e.g.*,

5
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."[22]  "[T]o determine if conduct violates a protective order, courts focus on the terms of the order itself."[23]  With this focus, the court is persuaded that Deppe violated the protective order and that remedies are warranted.

*First*, Deppe's prosecutions plainly relate to optical communication systems using VCSELs, parallel optical interconnects and laser drivers.

As for optical communication systems using VCSELs, both the '246 patent and the '547 application disclose VCSELs and explicitly reference active optical cables.[24]  Avago itself has

---

*Life Techs. Co. v. Biosearch Tech., Inc.*, Case No. 12-cv-00852-WHA, 2012 WL 1600393 at **33-35 (N.D. Cal. May 7, 2012) (barring attorney who improperly disclosed confidential information from accessing further information and excluding experts who improperly received such information from testifying about it); *WM Wrigley, Jr. Co. vs. Cadbury Adams USA LLC*, Case No. 04-cv-00346, Docket No. 265 (N.D. Ill. Mar. 31, 2008) (granting injunction preventing expert witness who violated prosecution bar from having further access to confidential information); *Visto Corp. v. Seven Networks, Inc.*, Case No. 2:03-cv-333-TJW, 2006 WL 3741891, at *8 (E.D. Tex. Dec. 19, 2006) (barring an attorney who violated a prosecution bar from any further receipt of confidential information in the case or any other case on the court's docket involving the aggrieved parties).

[22] Fed. R. Civ. P. 37(b)(2)(C).

[23] *Apple Inc. v. Samsung Elecs. Co., Ltd.*, Case No. 5:11-cv-01846-LHK, 2014 U.S. Dist. LEXIS 11778, at *33 (N.D. Cal. Jan. 29, 2014); *see also On Command Video Corp. v. LodgeNet Ent't Corp.*, 976 F. Supp. 917, 922 (N.D. Cal. 1997).

[24] *See* Docket No. 546-3, Ex. 2 at 9:16-37; Docket No. 546-4, Ex. 3 at ¶¶ 0052-53 ("The speed with which optical data can be transmitted by the link through an optical medium such as an optical fiber, waveguide, or free space, and received by photodiodes and additional electronic circuitry, that converts the optical data back to electrical data, may largely be set by the temperature performance and speed of the VCSELs.  Transceivers place the transmitting and receiving electronics and photonics components in a common housing, and allow both sending and receiving data by electronic circuitry, VCSELs, and photodiodes contained in a single housing.  If the optical medium is optical fiber, and the fiber permanently fastened to the housing contains the interface electronics, VCSELs and photodiodes, the complete system can form an active optical cable.  By using [depleted heterojunction current blocking region] comprising VCSELs, the optical links including active optical cable can be made to operate over a wider temperature range, and/or with higher speed, and with greater reliability.  These advantages are important for applications, for example . . . consumer products based on active optical cables.").

6
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

contended that active optical cables are optical communication networks within the scope of the '447 patent.[25]

As for parallel optical interconnects, the '246 patent and the '547 application both "have applications in . . . high speed optical interconnects"[26] and their "[d]isclosed embodiments include semiconductor light sources including diode lasers and arrays of such lasers."[27] The inventions claimed provide advantages when used in transceivers and can be embodied in arrays. As Deppe himself stated in this case, "Parallel Optical Devices ('PODs') use, among other things, an array of VCSELs and a receiver photodiodes . . . that allow communications rates of 2, 4 or 12 times faster than a single channel transceiver device . . . 2- and 4-channel PODs typically include both VCSELs and receiver photodiodes, and are thus a transceiver."[28]

As for laser drivers, the '246 patent and '547 application both relate to the use of a light source or laser to drive another light source. The '246 patent describes "the light sources can be driven with low voltage drive,"[29] discloses an embodiment as being "directed to compound

---

[25] *See* Docket No. 453 at ¶¶ 49-50 ("The IPtronics Defendants . . . instruct how to couple . . . products . . . to provide an optical communication network, such as the active optical cable products sold by the Mellanox Defendants."); *id.* at ¶¶ 53-54 ("An optical communication network . . . such as the active optical cable products sold by the Mellanox Defendants."); Docket No. 203 at ¶ 19.

[26] Docket No. 546-3, Ex. 2 at 16:15-17; Docket No. 546-4, Ex. 3 at ¶ 0090.

[27] Docket No. 546-3, Ex. 2 at 5:10-11; Docket No. 546-4 Ex. 3 at ¶ 0029; *see also* Docket No. 546-3, Ex. 2 at 9:22-37; Docket No. 546-4, Ex. 3 at ¶ 0053 ("Transceivers . . . allow both sending and receiving data by electronic circuitry, VCSELs, and photodiodes contained in a single housing. . . . By using DHCBR comprising VCSELs, the optical links including active optical cable can be made to operate over a wider temperature range, and/or with higher speed, and with greater reliability. These advantages are important for applications, for example, in which large numbers of transceivers are used in close proximity and cause heating, consumer products based on active optical cables that may have small housings to conserve space, and optical data links used in space and satellite communications.").

[28] Docket No. 203 at ¶ 16.

[29] Docket No. 546-3, Ex. 2 at 3:33-34.

7
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

semiconductor light sources used to drive a second light source within the vertical cavity,"[30] and claims "a conducting channel within said inner mode of confinement region that physically contacts and is framed by said [depleted heterojunction current blocking region], wherein said DHCBR forces current flow into said conducting channel during operation of said vertical light source."[31]  "Claim 1 of the '547 application is directed to a type of VCSEL that emits light that enters the active region of a second semiconductor laser to optically drive the second laser to emit light of a desired wavelength.  An example would be a VCSEL to optically drive an edge emitting laser."[32]  The claimed inventions therefore take into account parameters for driving light sources including VCSELs, or lasers.

Avago argues that "the '246 patent and the '547 application claim the structure of VCSELs and not the use or interaction of these VCSELs with other optical components."[33]  But the prosecution bar is not narrowed to claimed structures alone.[34]  Avago further notes that IPtronics does not make or sell VCSELs and has no information that would be useful for a patent application

---

[30] *See id.*, Ex. 2 at 3:42-45.

[31] *Id.* at 18:33-37.

[32] *See* Docket No. 555 at 8.  The '246 patent and '547 application both state that a significant feature is that the "optical link generally includes a housing for electronic circuitry that receives data in electrical form and conditions the electrical signals to drive DHCBR comprising VCSELs that produce the optical data signals.  This housing increases in temperature during operation of the optical link, which increases the temperature of operation of the VCSELs.  The speed with which optical data can be transmitted by the link through an optical medium such as an optical fiber, waveguide, or free space, and received by photodiodes and additional electronic circuitry, that converts the optical data back to electrical data, may largely be set by the temperature performance and speed of the VCSELs."  *See id.*, Ex. 2 at 9:8-21; Docket No. 546-4, Ex. 3 at ¶ 0052.

[33] *See* Docket No. 555 at 10.

[34] *See* Docket No. 555 at 4-5; 11-12, 17-18.  The prosecution bar explicitly uses the words "patents" and "patent applications."  Had the parties intended for the prosecution bar to follow Avago's interpretation, they would have used the term "claims," not "patents or patent applications."  The discovery that has taken place is not limited to patent claims alone, and contrary to Avago's contention, the '447 patent "is not limited to oxide VCSELs."  Docket No. 212 at 3, *contra* Docket No. 555 at 11.

relating to VCSEL structure.[35] But third-parties who have disclosed confidential information to Avago do make VCSELs,[36] and IPtronics sells laser drivers and transimpedance amplifiers for use with VCSELs—technologies specifically addressed by the prosecution bar.[37]

*Second*, Avago's attacks on IPtronics' experts do not hold weight. Avago argues that if Deppe has violated the language of the prosecution bar, so too have IPtronics' experts Constance Chang-Hasnain and Phillip Edwards. But there is no motion to exclude Chang-Hasnain and Edwards before the court. And even if Chang-Hasnain and Edwards have prosecuted patents related to the topics precluded in the prosecution bar, the prosecution bar does not apply to them if they did not gain access to confidential information in this action.[38]

*Third*, Avago's argument that IPTronics effectively waived any right to complain is unavailing. It is true that Deppe's involvement in the related International Trade Commission investigation, his designation as an expert with access to confidential information and his testimony at the Markman hearing all occurred long ago.[39] The protective order indeed requires the party to object to disclosure of "Highly Confidential—Attorneys' Eyes Only" material to an expert within 14 days.[40] But the ITC investigation did not include a prosecution bar.[41] And the protective order

---

[35] *See id.*

[36] Avago does not dispute that Deppe has received the confidential information of third parties. *See* Docket No. 555 at 23.

[37] *See* Docket No. 77 (precluding patent prosecution related to "laser drivers (including but not limited to VCSEL drivers)."). At the time the prosecution bar was stipulated to and entered by the court, IPtronics was the only defendant in the case and its only commercial products are laser drivers and transimpedance amplifiers. Docket No. 1 at ¶ 11.

[38] *See* Docket No. 561-1 at ¶ 2.

[39] *See* ITC Inv. No. 337-TA-860 (spanning from September 2012 to April 2014); Docket No. 555-1 at ¶ 12.

[40] *See* Docket No. 555 at 7.

[41] *See* Docket No. 561-2, Ex. A.

has two distinct provisions: one for objecting to disclosures and the other for enforcing the prosecution bar.[42] The prosecution bar is not triggered until after the expert receives confidential information, and nothing suggests that after discovering Deppe's prosecution efforts IPTronics lay in wait to enforce it.[43]

Turning to the appropriate remedy, for starters Deppe must return any IPtronics designated information and may not use that information for any purpose.[44] In addition, any testimony from Deppe is excluded from this action. IPtronics and third parties have relied on the terms of the stipulated order in disclosing their designated information, and Deppe's prosecution potentially harmed those who did disclose such protected information.[45] "The risk of inadvertent disclosure by expert witnesses who process patents themselves is amply demonstrated by the fact that potential experts for [parties] have already declined to serve as experts in light of the [] prosecution

---

[42] *Compare* Docket No. 77 at ¶ 7.4 and ¶ 9.

[43] IPtronics learned of Deppe's prosecution activities after Avago objected to one of IPtronics' potential expert witnesses, Phillip Edwards, earlier this year. IPtronics chose not to retain Edwards, but conducted a review to confirm that all IPtronics and Avago's experts, including Deppe, were in compliance with the prosecution bar.

Avago separately argues that IPtronics' motion is improper because it seeks both enforcement and sanctions. *See* Civ. L. R. 7-8; *Martinez v. City of Pittsburg*, Case No. 4:11-cv-01017-SBA, 2012 U.S. Dist. LEXIS 27230, at *12 (N.D. Cal. Mar. 1, 2012) (denying motion for sanctions on the grounds that it was not separately filed). But IPtronics' motion clearly put Avago on notice that it seeks sanctions for a violation of the protective order pursuant to Civ. L. R. 37 and Fed. R. Civ. P. 37. *See* Docket No. 555 at 24; Docket No. 546. This was sufficient.

[44] *Cf. Life Techs.*, 2012 WL 1600393 at **33-35; *WM Wrigley, Jr. Co. vs. Cadbury Adams USA LLC*, Case No. 04-cv-00346, Docket No. 265 (N.D. Ill. Mar. 31, 2008); *Visto*, 2006 WL 3741891 at *8.

[45] *See Life Techs.*, 2012 WL 1600393, at **3, 5, 11, 12 (finding the release of confidential information prejudicial because it provided undisclosed information that a competitor could use against the provider in the marketplace; and the release of confidential information to an expert witness was prejudicial because the witness was "inherently tainted"; so the court barred the attorney's further access and precluded the expert from testifying on the topic) *see, e.g.*, Docket No. 470 at 8-9 (seeking discovery from Tyco Electronics Svenska Holding AB in Sweden); Docket No. 472 (seeking discovery from Philips Technologie GmbH U-L-M Photonics in Germany).

10
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

bar."[46] IPtronics points out the difficulty in separating out confidential information in testimony, and the unreasonable lack of trust such a violation fosters.[47] Avago has policed IPtronics' reliance on experts based on the prosecution bar, and the same standard should apply to Avago. While there is no doubt Avago will be challenged by the exclusion of any Deppe testimony, this is a challenge of its own making, and in any event, Avago can still retain another expert. Reports are not due until September 18, and Avago has been on notice of Deppe's violations since at least February 4, 2015.[48]

The court declines to sanction Avago and their counsel. Deppe's failure to comply with the protective order may not have been substantially justified, but the court cannot say that Avago or its counsel should be held to account for it.[49] Under such circumstances, an award of expenses would not be just.

### IV.

IPtronics' motion to enforce the prosecution bar and remedy Avago's protective order violation is GRANTED-IN-PART. While IPtronics is not entitled to expenses, Deppe must return all designated information and promise not to use it, and his testimony is excluded from this case.

---

[46] *Applied Signal Tech., Inc. v. Emerging Markets Comm'ns, Inc.*, Case No. 09-cv-02180-SBA, 2011 WL 197811, at *5 (N.D. Cal. Jan. 20, 2011).

[47] *See* Docket No. 573.

[48] *See* Docket No. 522.

[49] *Cf. MGA Entm't, Inc. v. Nat'l Prods.*, Case No. 10-cv-07083-JAK, 2012 U.S. Dist. LEXIS 131614, at *10 (C.D. Cal. Sept. 14, 2012) (citations omitted) (holding a party's discovery conduct is substantially justified "if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action."); *see also Marquis v. Chrysler Corp.*, 577 F.2d 624, 642 (9th Cir. 1978).

11
Case No. 5:10-cv-02863-EJD
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO ENFORCE PROSECUTION BAR AND REMEDY PROTECTIVE ORDER VIOLATION

**SO ORDERED.**

Dated: June 11, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge